**UNITED STATES of America**

v.

**James T. MERRITT.**

**Crim. No. 1973–72.**

United States District Court,
District of Columbia,
Criminal Division.

Oct. 17, 1979.

R. Dennis Osterman, Asst. U.S. Atty., Washington, D. C., for plaintiff.

Dale A. Cooter, Cooter & Cooter, Camp Springs, Md., for defendant.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

On March 13, 1973, defendant pleaded guilty in this Court to a charge of bank larceny (18 U.S.C. § 2113(b)), with respect to an offense he had committed in October 1967. On June 1, 1973, Judge William B. Jones sentenced him to imprisonment for a period of one to three years, the sentence to run consecutively to a sentence defendant was then serving in the Patuxent Institution in the State of Maryland.[1] The federal sentence was lodged as a detainer with the Maryland authorities, and on three different occasions during his incarceration in Patuxent (in February, April, and July, 1976) defendant requested the United States Marshal's Office to make a determination concerning execution of the detainer. The Patuxent Institution itself likewise requested such a determination in June of the same year, but none of these requests met with success. According to defendant's uncontradicted testimony, he was informed that the U.S. Marshal would not execute the detainer unless compelled to do so by

---

1. Defendant was serving two consecutive ten-year Maryland sentences for distribution of a controlled substance (cocaine) and for receiving stolen property. Under Maryland law as it existed at that time, his confinement as a defec-tive delinquent at Patuxent was wholly indeterminate. At present, defective delinquents may apparently be held for no longer than the terms of their original criminal sentences.

"Washington" or "Patuxent." A memorandum from the Marshal's Office dated June 10, 1976, to the Patuxent Institution advises that no action would be taken on the detainer "until such time that we are notified that [defendant] is to be released from state custody." No such notification was ever given.

Ultimately, on August 27, 1976, defendant was paroled by the Maryland authorities to a halfway house in Baltimore. He has since been released from that halfway house;[2] he has married; he and his wife have one natural child and have adopted another, partially handicapped child for whose care defendant is responsible; he is an active member of his local church; and he has become part owner and vice president of a construction company.

On June 1, 1979, the U.S. Marshal's Office—apparently as a result of an inquiry from Judge Jones—arrested defendant on the outstanding detainer[3] and he has begun to serve the 1973 sentences. In his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence defendant claims that (1) he is entitled to credit towards his federal sentence for the time spent at Patuxent and therefore to release from confinement, (2) in the alternative, since he is still under the supervision of the Patuxent authorities, service of his federal sentence is premature, and (3) service of his federal sentence under the circumstances of this case amounts to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. It is unnecessary to reach the second and third contentions, for defendant is entitled to his release[4] on the first ground.

It is well settled that when a prisoner is released prior to service or expiration of his sentence through no fault or connivance of his own, and the authorities make no attempt over a prolonged period of time to reacquire custody over him, he may be given credit for the time involved,[5] and he will not be required at some later time to serve the remainder of his sentence. *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930); *Bailey v. Ciccone*, 420 F.Supp. 344, 347 (W.D.Mo.1976); *Albori v. United States*, 67 F.2d 4 (9th Cir. 1933).[6] Other courts have reached a similar result under what has been called a waiver of jurisdiction theory. *Smith v. Swope*, 91 F.2d 260 (9th Cir. 1937); *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967); *In re Jennings*, 118 F. 479 (E.D.Mo. 1902); *United States v. Croft*, 450 F.2d 1094

---

**2.** Technically, defendant is still on supervision status, however, and he is required to report from time to time.

**3.** The arrest was effected by the Washington, D.C., Office rather than the Baltimore Office.

**4.** The government argues that section 2255 may be invoked only where the court was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack (*United States v. Addonizio*, —— U.S. ——, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979)), and that defendant's claim does not fit any of these categories. However, the sentence here is "otherwise subject to collateral attack," as is borne out by the various decisions discussed *infra* where habeas corpus relief was considered, and sometimes granted, on fact situations similar to that involved here.

**5.** If defendant is given credit toward his sentence for the period following his release in accordance with the *White v. Pearlman* line of cases, the maximum sentence imposed by Judge Jones has expired.

**6.** These decisions proceed in part on the basis of the principle that a prisoner is protected by due process from being required to serve his sentence in installments. As the court stated in *White v. Pearlman, supra* (42 F.2d at 789), "A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under the strict rule contended for by the warden, a prisoner sentenced to five years might be released in a year; picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back. It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty."

(6th Cir. 1971); *Lanier v. Williams*, 361 F.Supp. 944 (E.D.N.C.1973).

■ Although different courts have thus chosen different theoretical bases for their conclusions, these conclusions do not differ in practice. A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted—the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his reincarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.'" See *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973).

The government does not, essentially,[7] dispute these principles but argues that defendant has not met the conditions required under the law. That contention is not well taken.

■ The argument that defendant's present predicament is his own fault may be summarily dismissed. Several times during his stay at Patuxent he contacted the U.S. Marshal's Office in an effort to have the status of his detainer clarified, but each time he met either with indifference or with affirmative declarations that the Marshal was not interested in serving or would not serve the detainer. When defendant was finally released on parole, neither the Maryland authorities nor the U.S. Marshal's Office made any effort to interfere with that release in spite of the outstanding detainer. It is wholly unreasonable to ascribe fault to this defendant because he did not, after that release, continue to badger the authorities to execute the detainer against him. Responsibility for defendant's release from prison and his subsequent at-large status rests entirely with the governmental authorities.

It is also clear that the actions of the federal authorities may appropriately be characterized as affirmatively wrong.[8] Defendant testified—and the Court finds him to be a credible witness—that the U.S. Marshal's Office in Baltimore advised him that it would not execute the detainer unless required to do so by someone else. That testimony is supported by the circumstances of defendant's release notwithstanding the detainer[9] as well as by corroborative evidence supplied by his Maryland parole supervisor.

■ The Marshal's determination in that regard in legal contemplation was affirmatively wrong. Notwithstanding his apparently good intentions (see note 9, *supra*), not only were his actions completely beyond his legal authority,[10] but they were also

7. The government does suggest that this Court should apply a 1895 decision of the Court of Appeals of the District of Columbia (*Leonard v. Rodda*, 5 App.D.C. 256 (1895)) which may be read to espouse the harsh rule that a sentence must be executed irrespective of any lack of culpability of the defendant and even though his custodians were guilty of misconduct in releasing him. The law has become significantly ameliorated by civilizing influences in the last 84 years, and the Court refuses to be bound by an antiquated decision contradicted by more recent rulings in several federal circuits.

8. This is not a case, such as *Bailey v. Ciccone*, *supra* or *United States v. Vann*, 207 F.Supp. 108 (E.D.N.Y.1962), where someone simply forgot to file a detainer and the oversight was never drawn to the attention of the officials. Here, the detainer was duly filed; defendant sought, again and again, to obtain a determination of his status; and he was finally released

upon his understanding and that of both the Maryland and federal authorities that he would not have to serve the federal sentence. Moreover, the detainers in the cited cases were executed when the respective defendants were rearrested on other charges; this defendant, by contrast, was plucked from a wholly peaceful and productive life.

9. What apparently occurred is that the Marshal was informed that defendant could not be released on parole absent an understanding with respect to non-execution of the detainer, and he agreed on that basis not to execute it.

10. This case illustrates the mischief caused by the failure of legislatures, law enforcement authorities, and perhaps courts, to prescribe rational, comprehensive rules concerning detainers. Because of the outstanding detainer, the Patuxent authorities believed that they were not free to release defendant notwithstanding

directly responsible for the predicament in which defendant now finds himself. See *Smith v. Swope, supra,* 91 F.2d at 262.[11] Moreover, even if it be considered that the present situation was created by the joint and several wrongful actions of the federal and Maryland governmental authorities, or by a jurisdictional or bureaucratic conflict between them, it would not change this conclusion. In one way or another, the wrongful actions of the agents of these two governmental bodies were inextricably intertwined, and as it may now no longer be possible to determine who was primarily at fault (except that it is not this defendant), it is appropriate to assess responsibility to those charged with execution of the federal detainer.

■ Finally, the Court would not be justified in disregarding the actual consequences of the actions of the governmental authorities and those that would follow from an order requiring defendant to serve his federal sentence now. Defendant was released as a result of a carefully-considered decision of the competent Maryland agency that he, and the community, no longer require his incarceration. Such decisions are not always right, but a substantial period of time has now elapsed, defendant has demonstrated exceptional adjustment and progress,[12] and the judgment of the Maryland authorities appears to have been fully vindicated by defendant's subsequent conduct. An order requiring service of defendant's sentence now[13] would needlessly jeopardize his long-term adjustment to society, disrupt both his family and his family life, and destroy his economic base,[14] all for no purpose other than to secure blind obedience to the 1973 sentence as it was then imposed.

The government, conceding all this, or at least not contesting it, contends, however, that irrespective of defendant's lack of responsibility for the current situation, and in spite of the fact that during the past three years he has been guilty of no wrongdoing but has done his best to become a useful citizen, the law demands precisely such obedience. But the law is neither as blind nor as unreasonable as the government's argument would suggest. The U.S. Court of Appeals for the Fifth Circuit has stated (*Piper v. Estelle, supra*) that a sentence, though once entered, need not be served when such service would be inconsistent with fundamental principles of liberty and justice. In the judgment of this Court, a requirement that defendant serve his sentence here and now would be precisely in that category; indeed it would shock the conscience of the Court.[15] For that reason, the writ must be granted.

For the reasons stated, it is this 17th day of October, 1979,

his rehabilitation absent an understanding that the detainer would not be served. Yet when that release was effected, the detainer continued to remain in the files, like a time bomb, ready to be activated at any time.

**11.** If the Marshal had correctly informed defendant that he had no discretion in the matter, arrangements might have been worked out between the Maryland and the federal authorities for service of the federal sentence in the State institution. Even if a worst-case analysis is adopted, and it is assumed that defendant would have been required, then and there, to serve his sentence in a federal institution, he would at least have been able to finish that sentence before he assumed his present family and business responsibilities.

**12.** Letters from friends and neighbors in his community use such phrases as "conscientious", "respectful", "asset to the community", "aware of his moral and Christian duties", and "upright in all of his business and personal dealings". Defendant is apparently engaged in an active prison ministry, visiting with prisoners, supplying them with religious materials, and generally attempting to assist in their rehabilitation. Defendant's family and business life has been noted, *supra.*

**13.** A denial of defendant's motion to vacate would be the equivalent of such an order.

**14.** As all the decisions recognize, each case in this area of the law must be decided on its own facts.

**15.** It is only upon that basis that the Court may avoid the consideration of the related question whether service of the sentence at this time would constitute cruel and unusual punishment in violation of the Eighth Amendment.

ORDERED That the sentence imposed upon defendant in Crim. No. CC 1973–72 on June 1, 1973, be and it is hereby vacated and set aside, and it is further

ORDERED That defendant be and he is hereby released from confinement forthwith.