OKETOPA ATUATASI, Appellant

v.

MOAALI'ITELE TU'UFULI, WILLIAM SELLERS, and AMERICAN SAMOA GOVERNMENT, Appellees

High Court of American Samoa
Appellate Division

AP No. 17-88

December 5, 1988

68

Before KRUSE, Chief Justice, KING*, Acting
Associate Justice, KAY**, Acting Associate Justice,
LUALEMAGA, Associate Judge, and TUIAFONO, Associate
Judge.

Counsel: For Appellant, Aviata Fa'alevao
 For Appellees, James Doherty, Assistant
 Attorney General

Per Curiam:

Appellant, Oketopa Atuatasi, was convicted on
July 22, 1987, of attempted rape and was sentenced
to seven years imprisonment. Execution of sentence
was suspended and the sentencing court pursuant to
A.S.C.A. § 46.2206 placed the appellant on
probation for a period of five years --- on
condition that he actually serve two years and 121
days in the Territorial Correctional Facility. It
was an explicit condition of the sentence that

---

* Honorable Samuel P. King, Senior
Judge, United States District Court for the
District of Hawaii, serving by designation of
the Secretary of the Interior.

** Honorable Alan C. Kay, District
Judge, United States District Court for the
District of Hawaii, serving by designation of
the Secretary of the Interior.

"[d]uring said period of incarceration defendant is not eligible for release from the confines of the correctional facility for reasons other than emergency medical care, without prior written permission of this Court." American Samoa Government v. Atuatasi, CR No. 12-87, Judgment and Sentence, at 2.

On March 15, 1988, appellant petitioned the Parole Board for release on parole. A clerical employee of the Parole Board who prepared the application mistook the condition of probation --- that appellant serve two years and 121 days in prison --- for the sentence of imprisonment. The Board did not catch the mistake and appellant's petition was granted on March 22, 1988. In its decision, the Board stated that appellant had been "sentenced to two (2) years and 121 days imprisonment" and that he "has served one-third of his prison term and is therefore eligible to apply for parole."

Several weeks after appellant's release, his probation officer happened to see him at large in the village of Lauli'i. The officer filed an affidavit with the Chief Justice who forwarded it to the Warden. The Warden examined the sentencing court's judgment and sentence and after consultation with the Office of the Attorney General, ordered the appellant reconfined to the Correctional Facility. An Assistant Attorney General then notified the Chief Justice who ordered that appellant's attorney of record be also apprised so that appellant could have legal counsel.

Exactly one month after reconfinement, appellant requested a writ of habeas corpus. The application was filed at 3:30 p.m. on May 18, 1988, and a writ issued immediately requiring the Warden and other named defendants to bring the appellant to Court on May 20 at 9:00 a.m. and to explain then and there the basis of appellant's confinement. At the hearing of appellant's application, the trial court concluded that detention was lawful.

Appellant moved for reconsideration claiming that his detention was unlawful because it violated the Parole Board's order releasing him and that the procedure by which he was reconfined violated due process. The motion was denied. In its Opinion and Order on Motion for Reconsideration entered

70

July 25, 1988, the trial court in reaffirming its conclusions found: that the Parole Board had no jurisdiction to order appellant's release and that the proceedings before the Board were had on the basis of a clerical error; that given the unique history and function of A.S.C.A. § 46.2206, the sentencing court had correctly applied the enactment; and that the procedure by which appellant was reconfined did not violate due process.

Appellant states the following for appellate consideration:

### Issues on Appeal

A. Whether the judgment and sentence of the criminal court is "vague, conflicting and therefore unconstitutional for violation of due process of law." Appellant's Brief, at 3.

B. Whether appellant's arrest and reconfinement for one month without any judicial determination violated due process.

C. Whether the court's "reliance" upon A.S.C.A. § 46.2206 was "erroneous and therefore illegal." Appellant's Brief, at 3.

### Constitutionality of the Judgment Below

Appellant claims that the "vagueness and ambiguity of the Judgment and Sentence . . . drew off not only the Appellant himself and the prison authorities to a different construction and understanding, it likewise construed [sic] by the Parole Board and their legal advisor from the Office of the Attorney General." Appellant's Brief, at 5. Appellant then quotes from a number of different cases dealing with ambiguous sentences to support his argument.

We need not belabor appellant's first point of contention. It seems to suggest that just because a handful of individuals may misconstrue an otherwise clear judgment and sentence, it necessarily follows that the judgment and sentence is vague and ambiguous without further ado. The logical consequence of this argument would be to raise the perpetuation of a careless misconstruction to constitutional proportions. Indeed the error, or misreading, was attributable below to a

71

clerk who was charged with organizing parole hearings --- not the prison authorities, the Parole Board, nor the board's legal advisor. The ambiguity argument is simply without foundation.

Our review of the judgment and sentence complained of reveals no more than very careful compliance by the sentencing court with the provisions of A.S.C.A. §§ 46.1902(4) and 46.2206(2), which respectively deal with sentencing options and detention as a condition of probation.

Finally, appellant attempts to paint a picture of befuddlement by contending that there is an inconsistency in suspending a "sentence of imprisonment" while imposing in the same breath "detention" as a condition of probation. To coin an old phrase, this is mixing apples and oranges. While incarceration is the end result, the language quoted above, as used by the legislature, purposefully denotes entirely different and available sentencing concepts. That difference was comprehensively discussed by the court below and we see no reason to repeat it here.

### Due Process and Estoppel

Appellant next contends that upon his arrest and reconfinement, the probation officer and the court were required under A.S.C.A. § 44.2214 to initiate a hearing without delay. He claims that notification of his attorney of record was not sufficient.

The enactment here relied on by appellant deals with procedural due process requirements in the context of a probation revocation proceeding. As noted by the court below, however, appellant was not in actuality arrested pursuant to an accusation of probation violation, which would trigger the requirements of section 44.2214. Rather, appellant was in custody pursuant to an order of the sentencing court which had issued pursuant to process of law in the first place. Appellant was then released in violation of that court order but was reconfined upon the realization that there was a violation of that order. The trial division viewed the appellant's situation as analogous to that of a convict who is mistakenly released by a prison guard without authority to order such release. Upon the discovery that such a person is at large the Warden first places him back in

72

custody and then worries about a hearing.
According to testimony below, appellant was still
regarded as a danger to the community by the
Assistant Attorney General who advised the Warden
to reinstate custody.

Arguably, and notwithstanding the actual
course of events, it could be said that with
detention being a condition of probation,
appellant's mistaken release resulted in a breach
of that probationary condition. Therefore the
section 46.2214 hearing, as now contended by
appellant, should have been appropriate.

Two observations may be made about this
possibility. Firstly, probation revocation
hearings provided by section 46.2214 are concerned
with whether the probationer himself has violated
the conditions of probation. The consequences of
such violations include punitive measures such as
enlarging the term and conditions of probation or
even requiring that any sentence previously given
be executed. See A.S.C.A. § 46.2209. Obviously,
such punitive measures would be hopelessly improper
in a case such as this where a violation of a
probationary condition was not due to any fault of
the probationer himself but arose through
administrative oversight. Therefore it is very
doubtful that the application of section 46.2214 is
intended by the enactment in these circumstances.
Secondly, even if the procedure whereby appellant
was taken into custody fell short of due process,
we are in complete agreement with the trial
division that immediate notice to his counsel of
record as well as a plenary hearing immediately
upon his request would seem to be curative of any
defect or at least render such defect moot.

While not argued in his brief, appellant at
oral argument further contended that the government
having once released him may not now reincarcerate
him. He advances two somewhat related theories to
justify this assertion. First, appellant argues
that to return him to the Correctional Facility
would violate his substantive rights of due
process. Second, he maintains that the government
is equitably estopped from arguing that he was
ineligible for parole. With both these arguments
we disagree.

The trial court had determined, with the
agreement of the government, that appellant was

73

entitled to credit towards his term of detention for the 28 days during which he was mistakenly free. We affirm since a criminal sentence " 'means a continuous sentence . . . and he [defendant] cannot be required to serve it in installments.' " Green v. Christiansen, 732 F.2d 1397, 1400 (9th Cir. 1984) (quoting White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930)). So long as appellant was released due to "the inadvertence of agents of the government and through no fault of his own," id., he must be granted full credit for the time he was "paroled."

However, appellant argues that due process requires not only that the government give him credit for the 28 days but that the government also be barred from reimprisoning him. Such due process claims have been recognized by several of the federal circuits in cases of rearrest following an inadvertent release. However, appellant's claim will succeed only if his reincarceration would not accord with "fundamental principles of liberty and justice." Shields v. Beto, 370 F.2d 1003, 1004 (5th Cir. 1967). Not every "ministerial mistake" will reach the level of due process violation. Green, supra, 732 F.2d at 1399. Rather, there must be " 'action so affirmatively wrong or inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction.' " Johnson v. Williford, 682 F.2d 868, 873 (9th Cir. 1982) (citing Piper v. Estelle, 485 F.2d 245, 246 (5th Cir. 1973)).

On the facts below, the government's conduct would be more properly characterized as a ministerial mistake rather than as affirmatively wrong action or grossly negligent inaction. As the trial court noted, "the clerical employee who prepared the [appellant's parole] application and the [Parole Board's] order simply made a mistake," and mistook the two and one-third year period of detention as a condition of probation for the sentence of imprisonment. Atuatasi v. Moaali'itele, CA No. 55-88, Opinion and Order on Motion for Reconsideration, at 5, 8 A.S.R. 53, 58 (1988). Comparison with the facts of Johnson and Green is instructive. In Johnson, defendant was sentenced under a statute which allowed no parole. The government nevertheless reviewed the defendant's eligibility for parole on eight

separate occasions at various levels of the parole bureaucracy, each time setting a presumptive parole date. Johnson, supra, 682 F.2d at 870. Thus the government's action in releasing him truly reached the level of gross negligence. By contrast, in Green, the prisoner was serving concurrent federal and state prison terms in a state prison. When he became eligible for parole on the state charge, a state official inquired of the United States Marshal's office whether a "hold" should be placed on him. Green, supra, 732 F.2d at 1398. Because of "inadvertence of a marshal . . . [which] amounts to mere negligence at worst" the detainer was never placed and Green was paroled. Id. at 1399. Clearly, the facts of this case before us seem more similar to those of Green than the facts in Johnson.

The courts have also looked to the degree of a former prisoner's reintegration into society and how much reimprisonment would disrupt that reintegration in determining whether fundamental principles of liberty and justice would be violated by reincarceration. United States v. Merritt, 478 F.Supp. 804, 808 (D.D.C. 1979). See also Johnson, supra, 682 F.2d at 873 n.3. In Merritt, a parolee from a state prison had been released for almost three years before being arrested on a federal charge whose term was supposed to have run following the state term. During those three years, he had married, had one child and adopted another, become part owner of construction company, and been an active member of both his local church and a prison ministry. Merritt, supra 478 F.Supp. at 806, 808. By contrast appellant here had been released for but twenty eight days before being arrested.[1] True, he had apparently returned to his family and was staying with them. But nothing in the record indicates that he had made such a readjustment to society that removing him from it

_____

[1]. We have serious doubts whether a release of such short duration could ever lead to a successful due process challenge to reincarceration. However, we need not decide that question today. "[E]ach case in this area of the law must be decided on its own facts," Merritt, supra, 478 F.Supp. at 808 n.14, and on these facts appellant has shown no basis for relief.

now would contravene fundamental principles of liberty and justice.

The second aspect of appellant's argument is that, having once released him, the government is now estopped from denying his initial eligibility for parole. This contention requires appellant to first demonstrate that his case comes within the traditional elements of estoppel and then surmount the additional burdens placed upon one who seeks estoppel against the government.

The Ninth Circuit has articulated a four part test for estoppel:

1) The party to be estopped must know the facts;
2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
3) the latter must be ignorant of the facts; and
4) he must rely on the former's conduct to his injury.

Johnson, supra, 682 F.2d at 872 (quoting United States v. Georgia-Pacific Co., 421 F.2d 92, 96 (9th Cir. 1970)).

Here, assuming appellant could satisfy the first three conditions of estoppel, his action would fail on the fourth. Atuatasi can demonstrate no injury sufficient to raise an estoppel. The parolee in Johnson had, in the fifteen months of his inadvertent release, begun a business, hired several employees, and returned fully to life with his wife and two children. Johnson, supra. Having been released for a period of less than one month, appellant has not shown any injury of the degree demonstrated in Johnson.

Even if Atuatasi had been able to make out a case for equitable estoppel generally, his task would not be complete. He would still have to show that this is an appropriate case for estopping the government.

When it acts in a sovereign capacity, the government is generally not subject to being estopped. Johnson, supra, 682 F.2d at 871. However estoppel may be applied against the

76

government if two conditions are met. "[T]he government's wrongful conduct must threaten 'to work a serious injustice' and the public's interest must not 'be unduly damaged by the imposition of estoppel.'" Id. (quoting United States v. Lazy FC Ranch, 481 F.2d 985,989 (9th Cir. 1973)). As we explained above, there is no evidence that a "serious injustice" will be occasioned by reincarcerating appellant. Moreover, we cannot say that the public's interest would remain unharmed if Atuatasi were set free. After all, he was sentenced to detention as a condition of probation precisely because the trial court determined that he posed too great a danger to the community if he were eligible for work release or similar early release programs. On the other hand, the Parole Board's decision to release appellant after nine months cannot be taken as an indication that that danger had dissipated. Not only was it had without jurisdiction, it reflected a certain degree of carelessness which prompted other agencies of the executive branch to affirmatively seek appellant's reconfinement. Moreover, although the time that Atuatasi spent outside the Correctional Facility was concededly without any incidents of violence, it was too brief to allow us to say that the public interest would not be "'unduly damaged'" by his release.

### Applicability of the Parole Statute

In arguing that the sentencing court's "reliance" upon A.S.C.A. § 46.2206 was "erroneous and therefore illegal," appellant first contends that the trial court should have sentenced him to a "straight sentence" rather than suspending his sentence and putting him on probation on the condition that he serve two years and 121 days in prison. Appellant feels that the court by invoking the probation alternative, as opposed to straight sentencing, had achieved the effect of "cutting-off the early release [of appellant] on parole." Appellant's Brief, at 11.

This claim is clearly erroneous. Section 44.2206 provides that when probation is granted, the court may designate "detention in an appropriate institution." For felonies, the period of detention may not exceed "one third of the maximum prescribed term of imprisonment for the crime of which the defendant has been convicted." A.S.C.A. § 46.2206(2). Since appellant would have

had to serve one-third of his seven-year sentence before becoming eligible for parole, A.S.C.A. § 46.2304(a)(1), he would have had to serve that two years and 121 days under a straight sentence anyway.

Secondly, appellant argues that the sentencing court had resorted improperly to the use of section 44.2206 and imposition thereby of detention. Appellant points to the provisions of section 46.2203 dealing with probation eligibility requirements. The argument appears to be that this enactment regards probation as a "rehabilitative" measure to be imposed only in those cases where the court has determined that institutional confinement is unnecessary and the defendant is not a danger to society. Appellant reasons that as the court had found him a suitable probation candidate, the imposition of an extended term of detention was "retributive" punishment and therefore inconsistent with rehabilitative treatment.

It is to be noted that the validity of section 44.2206 is not challenged by appellant. It is also noted that appellant's submission is made without citing any authority; it entirely ignores the history of this enactment as detailed by the court below. Additionally, the submission is premised on the faulty assumption of fact that appellant is no longer considered a danger to society nor an appropriate case for institutional confinement. The evidence below clearly indicated the contrary. That the appellant was a danger to society was precisely the sentiment of the sentencing court. Hence the reason for that court's imposition of probation pursuant to section 46.2206(2) with the maximum allowable period of detention imposed without any possibility for earlier release unless the court approved.

Notwithstanding the apparent textual ambiguity, or conflict, between the provisions of section 46.2203 and the 1987 amended section 46.2206(2), it seems clear from the latter enactment's history that the Fono has deliberately extended the probationary detention sentencing option beyond the traditional "shock value" function of detention. The amendment of 1987 now permits significantly more extensive supervision by the court regarding the conditions of detention of prisoners. Whereas pre-amendment times limited conditional probation detention to a period not

78

exceeding 1 year, the court in appropriate cases may now impose, as a condition of probation, a detention period of up to 15 years. The change, as noted by the court below, is dramatic and we agree that it has therefore given the probation statute an entirely different purpose. The conflict between the provisions referred to above was correctly addressed below. That is, the 1987 amendment --- section 46.2206(2) --- is a specific and later enactment to that embodying section 46.2203. The cardinal rules of construction are that the general gives way to the specific and that the earlier is implicitly amended pro tanto by the latter where an obvious conflict is apparent. This is not to say that in the appropriate case the sentencing court may no longer utilize the probation option in the manner originally envisaged with the section 46.2203 recitals. On the contrary, the recitals are no longer deemed as factual assumptions of general application in every probation matter. There will be occasions where a defendant is not considered a danger to society nor appropriate for imprisonment except for shock value detention. There is now, in addition, a probationary purpose available for exactly the opposite reasons.

For the reasons given above, we affirm.