THE STATE OF NEVADA, Appellant, *v.*
ERNEST J. BANDICS, Respondent.

No. 21181

February 7, 1991 805 P.2d 66

[Rehearing denied May 2, 1991]

*Frankie Sue Del Papa,* Attorney General, Carson City; *Karen M. Wright,* Deputy Attorney General, Las Vegas; *Rex Bell,* District Attorney, Clark County, for Appellant.

*William Smith* and *Annette R. Quintana,* Las Vegas, for Respondent.

## OPINION

By the Court, YOUNG, J.:

On July 24, 1981, Ernest J. Bandics was convicted, pursuant to a guilty plea, of one count of robbery with use of a deadly weapon and one count of grand larceny. NRS 200.380, 193.165, 205.220. Bandics was sentenced to two consecutive terms of fifteen years and one consecutive term of ten years in the Nevada State Prison, to be served concurrently with the twelve year federal sentence for bank robbery Bandics was already sentenced to serve.

In August of 1981, Bandics began his federal prison term. On March 24, 1988, the federal correctional institution in Phoenix sent a "detainer action letter" to the Department of Prisons in Nevada. That letter indicated that Bandics would be released on April 29, 1988, and that the Department of Prisons should make arrangements to pick up Bandics.

On April 11, 1988, Sharon Montgomery, a warrant coordinator with the Nevada Department of Prisons, wrote to Joyce Langhorst at the federal correctional institution in Phoenix and, referring to an earlier phone conversation, indicated that "Mr. Bandics was discharged from his Nevada sentence on January 4, 1986 and this department has no further interest in him." This information was apparently erroneous. On April 19, 1988, the federal correctional institution in Phoenix sent another "detainer action letter" to the Nevada Department of Prisons. This detainer action letter indicated that the detainer on Bandics had been removed pursuant to the state's request.

On June 1, 1988, Bandics was paroled from his federal sentence. Bandics violated his parole by using a controlled substance, and voluntarily reported this fact to his parole officer. On February 24, 1989, Bandics was arrested by federal officials for violating parole. Bandics was again paroled in September of 1989. On February 24, 1990, Bandics was arrested by Nevada authorities, who had discovered their error in releasing the Nevada detainer on Bandics.

On May 11, 1990, Bandics filed in the district court a petition for a writ of habeas corpus, alleging that the state could not lawfully reincarcerate him. On June 22, 1990, the district court granted Bandics' petition and ordered Bandics released from prison. This appeal by the state followed.

The district court, in granting Bandics' petition, found that principles of waiver, equitable estoppel, and due process prevented the state from reincarcerating Bandics. In these conclusions the district court erred. The central issue in deciding whether the state can lawfully reincarcerate a prisoner who has been mistakenly released is whether the state's conduct amounts to more than a ministerial error. *See* Green v. Christiansen, 732 F.2d 1397 (9th Cir. 1984); United States v. Merritt, 478 F.Supp. 804 (D.D.C. 1979). We emphasize that the analysis must focus on the conduct of the state, not that of the former prisoner. Although appellant did relapse after parole on one occasion and used drugs, we grant the point made in the dissent that Bandics' adjustment to freedom appears to be otherwise free of crime. Nevertheless, Bandics' behavior has no bearing on the question of whether the state has committed more than a simple, ministerial error.

Our review of the record convinces us that the state's mistake here was nothing more than ministerial error. Accordingly, we conclude that the district court's findings of waiver, equitable estoppel and violation of due process are clearly erroneous and not supported by substantial evidence. Accordingly, we vacate

the district court's order granting Bandics' petition for a writ of habeas corpus, and remand this matter to the district court for further proceedings in light of this opinion.

SPRINGER and STEFFEN, JJ., concur.

MOWBRAY, C. J., dissenting:

Respectfully, I dissent.

Respondent Bandics was serving a state sentence for robbery with a deadly weapon, concurrently with a federal sentence already imposed. During respondent's term of confinement at the federal prison at Lompoc, California, the Nevada Department of Prisons Officer, Mr. Demosthenes, declined to accept respondent as a concurrent service of sentence transfer due to space limitations. On May 10, 1984, Bandics was approved for federal parole as of November 20, 1986. Bandics wrote to Demosthenes, informing him that he would soon be referred for concurrent service of his sentence. Bandics received a reply that he was due for a Parole Board hearing on his Nevada sentence in November, 1986.

On March 24, 1988, the United States Bureau of Prisons notified the State of Nevada Department of Prisons of Bandics' anticipated date of release on parole and requested the Nevada Department of Prisons to take custody of Bandics on April 19, 1988. The Nevada Department of Prisons responded, stating that Bandics was discharged from his Nevada sentence on January 4, 1986, and that the State of Nevada Department of Prisons had no further interest in Bandics.

On April 13, 1988, the United States Bureau of Prisons informed Bandics that the State of Nevada no longer had any interest in him, and that his release date was set for June 1, 1988. Bandics was paroled on June 1, 1988 as scheduled. He registered as an ex-felon and resided openly in Las Vegas. According to the district court, Bandics had become "a worthwhile and productive member of society, gainfully employed, free from the use of drugs or alcohol, and conducting himself as a loving and responsible son and father, with plans to marry into a family to whom he had proved himself to be a responsible caring person."[1]

On February 24, 1990, the Nevada Department of Prisons discovered their "mistake" and had Bandics arrested. Bandics brought a petition for a writ of habeas corpus to the district court. The district court ordered the prison authorities to release Ban-

---

[1]According to respondent, he used drugs on one occasion and immediately sought counselling. Respondent reported himself to his parole officer and was imprisoned from February 24, 1989 through September, 1989.

dics, concluding that, given the special circumstances of this case, they had relinquished jurisdiction and were barred from exercising custody.

A purely ministerial mistake does not, by itself, give rise to a "waiver of jurisdiction." United States v. Merritt, 478 F.Supp. 804, 807 (D.D.C. 1979). However, where a defendant is released through no fault of his own, as a result of actions which transcend simple neglect, and where reincarceration is unequivocally inconsistent with fundamental principles of justice, the state should not re-imprison the defendant. *Id.*

In the present case, respondent was released through no fault of his own. The State of Nevada Department of Prisons unilaterally determined that they had no further interest in Bandics. This disinterest seemed to be part of a pattern, considering that these authorities had declined to exercise jurisdiction over respondent on a prior occasion as well.

Respondent's release was more than the result of "simple" negligence. When considering the pattern of disinterest exhibited by the State of Nevada Department of Prisons, especially when viewed in light of the frequent correspondence received from respondent and the federal prison authorities, it becomes apparent that respondent's release was not the result of some simple clerical error.

Finally, it is evident that the reincarceration of Mr. Bandics will violate fundamental principles of justice. A defendant, once released from prison, should have the opportunity to live down his past and reestablish himself. Shelton v. Ciccone, 578 F.2d 1421, 1245 (8th Cir. 1978). An arrest on an unexecuted sentence will interrupt reintegration into the community. *Id.* In the present case, Mr. Bandics reintegrated into the community, located a job, developed strong family relationships, and cultivated a prospective marriage. To rip Mr. Bandics out of this environment and return him to prison will constitute the gravest injustice. Nothing can be gained by forcibly severing a rehabilitated person from his ties in the community.[2]

Respondent has become a reformed and productive member of society. By interfering with respondent's rehabilitation, this court commits a gross miscarriage of justice.

ROSE, J., joining MOWBRAY, C. J., in dissent:

I concur with the dissent's conclusion that reincarceration of Mr. Bandics would violate fundamental principles of justice. I

---

[2]It should be noted that Mr. Bandics had been a model prisoner who had availed himself of all educational and vocational opportunities in order to become a productive member of society.

reach this conclusion based on the facts previously stated and that upon reincarceration, Mr. Bandics will have little additional time to serve until eligible for parole.

The attorney for the State explained during oral argument that Mr. Bandics will be entitled to credit for the time that the State's own negligence kept him from serving in Nevada. Given this credit, Bandics will be eligible for parole this summer. Since Mr. Bandics has made great strides in his rehabilitation and has become a productive and law-abiding member of society, it seems probable that he would be paroled at the first opportunity. Uprooting him now to serve about six months before being paroled makes little sense when we consider the time he has already served and the base of support he has established in Las Vegas.

For these reasons, I would affirm the order of the district court granting Bandics' petition for a writ of habeas corpus.