**Terrence WELLS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 99–SP–351.

District of Columbia Court of Appeals.

Submitted June 17, 2002.
Decided July 11, 2002.

Terrence Wells, pro se.

Roscoe C. Howard Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Suzanne Grealy Curt, Assistant United States Attorneys, were on the brief for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

---

FARRELL, Associate Judge.

Wells appeals from the denial of his petition for a writ of habeas corpus, *see* D.C.Code § 16–1901 (2001), arguing that due process requires, at the least, that he receive credit toward District of Columbia sentences he is now serving for some twenty-five months during which he was at liberty after he was paroled by Virginia authorities but before District of Columbia parole officials executed a parole violation warrant against him. We affirm.

### I.

In September 1989 Wells was sentenced in the District of Columbia to a prison term of 15–45 months for attempted distribution of phencyclidine. In July 1990 he was released on parole until the expiration of his term (March 1993). In August 1990 and again in June 1991, however, he was re-arrested in the District and charged respectively with attempted distribution of cocaine and unauthorized use of a motor vehicle (UUV). These charges coincided more or less with his arrest on drug charges in Virginia, for which he was convicted in state court and received a ten year prison sentence beginning in July 1991. He was separately convicted of the District of Columbia charges and, in November 1991, sentenced to three to nine years in prison for the attempted cocaine distribution and 180 days for the UUV. These sentences were expressly made to run consecutively to each other and, by operation of D.C.Code § 23–112 (2001), to the sentence being served in Virginia.

In February 1992, on the basis of his intervening crimes in the District of Columbia, the D.C. Parole Board issued a warrant charging appellant with violation of his parole. Through an administrative

error not explained in the record, the warrant either was not lodged with the Virginia correctional authority as a detainer or, if it was, that authority lost track of it.[1] Nor were Virginia officials aware of appellant's unexecuted sentences for the intervening District of Columbia crimes. As a result, when appellant was paroled from his Virginia sentence in May 1996, he was released into the community rather than returned to the District to serve those sentences or to answer the Board's parole violator warrant.

Some twenty-five months later, in June 1998, appellant was re-arrested in the District and charged with first-degree child sexual abuse. The following month, his parole violator warrant was executed and a revocation hearing was conducted, at which he admitted a number of parole violations related to the 1990 and 1991 re-arrests and, in reference to the 1998 re-arrest, conceded that he had had sexual contact with a thirteen-year-old niece. Regarding this crime, the hearing official's comments noted that the incident was "clearly a case of carnal knowledge" and that force had been used in the offense (though appellant disputed this fact). On August 21, 1998, the Board revoked appellant's parole.

### II.

■ Appellant first argues broadly that the government "lost jurisdiction" over him because of its failure to execute the parole violator warrant between 1992 and 1998, with the result that he may not be made to serve either his unexecuted sentences in the District or the back-up prison time stemming from his parole violations. This argument has no merit. In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50

1. The government represented below merely that, through "a clerical error," the Virginia officials "had no record of a ... parole detainer from the District of Columbia."

L.Ed.2d 236 (1976), the Supreme Court held that due process does not require a parolee imprisoned for a crime he commits while on parole to be given a prompt revocation hearing when a parole violator warrant has been lodged against him. Indeed, the Court explained, "Given the predictive nature of the [revocation] hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate—at the expiration of the parolee's intervening sentence." *Id.* at 89, 97 S.Ct. 274; *see also Bennett v. Ridley*, 633 A.2d 824, 827 n. 2 (D.C.1993). In this case, the District parole officials were not obliged to execute on the violator warrant before appellant's release by Virginia in 1996; and even then due process did not require them to act so long as appellant still had two unexecuted—in fact wholly unserved—District of Columbia sentences.

■ Appellant's more plausible argument is that because the failure to file the detainer in Virginia (or the loss of any record of it by Virginia officials) resulted in his release from prison and readjustment in the community—where, for example, he became gainfully employed—he should be given credit toward his unserved prison sentences for the time he was at liberty. There is, admittedly, support for the principle that " 'a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and ... that the delay in execution of sentence was through no fault of his own.' " *Clark v. Floyd*, 80 F.3d 371, 374

(9th Cir.1996) (quoting *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir. 1988)). In considering whether to apply this principle, we assume without deciding that the fact that appellant's mistaken release did not catch the attention of governmental authorities in the District for twenty-five months was "negligence" on their part (or on the part of Virginia officials), to which appellant did not contribute.[2]

This court's decision in *Davis v. Moore*, 772 A.2d 204 (D.C.2001) (en banc), requires us to reject any broad "doctrine of credit for time at liberty." *Martinez*, 837 F.2d at 865. In *Davis* we considered whether, among other things, constitutional due process would be violated by application of this court's decision in *United States Parole Comm'n v. Noble*, 693 A.2d 1084 (D.C.1997), *op. adopted*, 711 A.2d 85 (D.C.1998) (en banc),[3] to prisoners whose parole had been revoked but who, following revocation, had been "officially told that they would receive. credit for their street time," *i.e.*, the time they had spent on parole. *Davis*, 772 A.2d at 219. In concluding that the frustration of such prisoners' "reasonable expectations" that they would receive that credit did not violate due process, we followed the general rule that an "offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention and punishing criminals." *Id.* at 220 (citations omitted). We quoted in particular *United States v. Merritt*, 478 F.Supp. 804, 807 (D.D.C.1979), for the principle that " '[a] convicted person will not be excused from serving his sentence merely because some-

---

**2.** The record indicates that in the first year of serving his Virginia sentence appellant inquired of his attorney about "outstanding detainers." The attorney replied that a check had revealed that no current detainers related to appellant appeared in the database of the Virginia Department of Corrections.

**3.** *Noble* held that a previous congressional enactment providing for loss of accrued "street time" when parole is revoked was not repealed by a later statute passed by the Council of the District of Columbia.

one in a ministerial capacity makes a mistake with respect to its execution.'" *Davis,* 772 A.2d at 219. At the same time, we allowed for "the possibility that, under 'extreme' circumstances, a belated correction of a sentence might be 'so unfair that it must be deemed inconsistent with fundamental notions of fairness embodied in the Due Process Clause.'" *Id.* at 220 (quoting *DeWitt v. Ventetoulo,* 6 F.3d 32, 35 (1st Cir.1993)). But we emphasized that "[o]nly the most egregious case, involving for example governmental culpability and unusual prejudice to the affected prisoner, would support a substantive due process claim." *Id.; see also Merritt,* 478 F.Supp. at 806–07 (before relief will be granted for "ministerial" error regarding sentence execution, "the result must not be attributable to the defendant himself; the action of the authorities must amount to *more than* simple neglect; and the situation brought about by defendant's release and reincarceration must be *unequivocally* inconsistent with fundamental principles of liberty and justice" (citations and internal quotation marks omitted; emphases added)), *quoted in Millard v. Roach,* 631 A.2d 1217, 1225 n. 17 (D.C.1993).[4]

Application of this "extreme circumstances" exception does not avail appellant. First, nothing in the record implies that the failure of the District parole officials to lodge the parole warrant as a detainer— or, as the case may be, the failure of Virginia officials to maintain a record of the lodged detainer—was "more than simple neglect." *Merritt, supra.* Second, the "unfairness" of re-arresting *Wells* does not rise to the level shown in cases where re-arrest has been deemed unfair, such as *Johnson v. Williford,* 682 F.2d 868, 870, 872 (9th Cir.1982) (parole authority incorrectly calculated prisoner's sentence on eight separate occasions, and prisoner was living with his family, operating a business, and reporting to his parole officer). Third, although appellant had been paroled by Virginia after serving five years of his ten-year prison sentence, his release was almost certainly conditional, unlike cases applying the "credit for time at liberty rule" where the release had been unconditional and the prisoner was thus unaware "that his parole time [was] at risk." *Green v. Christiansen,* 732 F.2d 1397, 1400 (9th Cir. 1984).[5] Finally, and perhaps most importantly, the manner in which appellant re-entered the District of Columbia justice system is inconsistent with the notion that he had successfully readjusted to the community, and supports the judgment of the parole authority that "he, and the community, [still] require his incarceration." *Merritt,* 478 F.Supp. at 808. As pointed out, he was re-arrested and charged with first-degree sexual abuse of a thirteen-year-old child, an act he admitted at the revocation hearing.

*Affirmed.*

---

**4.** In *Merritt,* U.S. District Court Judge Harold Greene ordered the defendant to be given credit for time during which he had been at liberty, in part because a U.S. Marshal's Office had "affirmatively" refused to execute a federal sentence detainer upon the defendant's release by Maryland authorities, and because the release had resulted from "a carefully-considered decision of the competent Maryland agency that he, and the community, no longer require[d] his incarceration." *Merritt,* 478 F.Supp. at 807–08. Here,

by contrast, there is no record indication that the Virginia authorities had any knowledge of appellant's intervening District of Columbia convictions before concluding that he could be safely released into the community.

**5.** Stated differently, appellant's expectation of continued liberty was inherently somewhat diminished in comparison to a person released unconditionally.