[Cite as *State v. Bevington*, 2012-Ohio-6285.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-106 |
| ANTON BEVINGTON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County Court of Common Pleas, Case No. 2012-CR-0103

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 31, 2012

APPEARANCES:

For Plaintiff-Appellee

JOHN FERRERO
PROSECUTING ATTORNEY
BY: KATHLEEN TATARSKY
110 Central Plaza South, Ste. 500
Canton, OH 44702-1413

For Defendant-Appellant

STEVEN REISCH
STARK COUNTY PUBLIC DEFENDER
200 W. Tuscarawas Street, Ste. 200
Canton, OH 44702

*Gwin, J.*

**{¶1}** Appellant Anton Bevington ["Bevington"] appeals the May 8, 2012 Judgment Entry of the Stark County Court of Common Pleas denying his motion to suppress evidence. Appellee is the State of Ohio.

### *Factual and Procedural Background*

**{¶2}** Bevington was placed on post-release control (PRC) for three years in September 2010 after a criminal conviction. In August 2011, Rick Polinori, a parole officer from the Ohio Adult Parole Authority (APA), took over supervising Bevington's release.

**{¶3}** Bevington agreed to and signed a series of rules as a condition of his post-release control. Among those rules was a set of rules that permitted his parole officer to conduct unannounced home visits. Additionally, the rules provided for warrantless searches of Bevington's residence if the parole officer had reason to believe Bevington was violating any conditions of post-release control. As one of the conditions of post-release control, Bevington was to abstain from illegal controlled substances.

### *The Crime*

**{¶4}** On October 7, 2011, Polinori received a call from Alliance Police Officer Mike Jones about an incident at a hotel. Bevington had received a severe head injury requiring medical attention. Based on the information that he was told, and his familiarity with Bevington, Polinori suspected that drug activity might have been involved in the incident. Polinori went to Bevington's home in Alliance to investigate. Polinori knocked on the door, which was opened by Bevington's wife/girlfriend, Heather. Heather let Polinori inside the home. Polinori found Bevington laying down in the living room.

Polinori spoke with Bevington and observed the injuries to his head. Polinori then told Heather and Bevington that he was going to conduct a parole search of the home.

**{¶5}** Heather took Polinori to the basement where he observed some weight lifting equipment. Polinori found three bottles of anabolic steroids and several hypodermic needles inside Bevington's folded clothes.

**{¶6}** The bottles were sent to the Stark County Crime Laboratory on October 11, 2011 for testing. They were found to be 23.4 grams of Testosterone, an illegal controlled substance.

**{¶7}** The Stark County Grand Jury indicted Bevington on one count of possession of drugs, a violation of R.C. 2925.11(A)(C)(2)(b), a felony of the fourth degree. The bill of particulars provided more details, i.e., the controlled substance was Testosterone 23.4 grams in three factory sealed injection vials labeled Aratesto.

**{¶8}** On March 16, 2012, Bevington filed a motion to suppress. Bevington claimed that he was granted an early release from post-release control on September 27, 2011, and, therefore, Polinori had no authority to conduct a warrantless search of his home on October 7, 2011. On April 23 2012, the Court held a hearing on Bevington's motion.

### *Polinori's Testimony*

**{¶9}** Polinori's testified that Bevington originally received a three-year period of post-release control. However, Bevington became eligible for early release after supervision for one year. On September 27, 2011, Polinori sent his report recommending an early release for Bevington to the chief of the adult parole authority in Columbus, Ohio. He further testified,

Yes, September 27, I believe is when I processed the paperwork and it goes through a series of hands to be approved starting with my supervisor to [sic.] Columbus.

And once they process the paperwork, they stamp it and send it back to us.

Typically it takes anywhere from two to four weeks is the typical turnaround time for that to happen.

During that time frame, however, they are on supervision until they receive the final release.

T., April 23, 2012 at 12. The "Final Release from Supervision" document from the APA had a processing date of October 14, 2011. T. at 11. The eligibility or "effective date" typewritten on that form was September 27, 2011. Id. at 11-12.

### Trial Court's Decision and Plea

{¶10} The trial court found that "the validity of the search as a 'parole search' has not been questioned here. Polinori conducted a 'good faith' parole search of [Bevington's] residence." The trial court reasoned that legal custody of the parolee shall remain in the department of rehabilitation and correction until a final release is granted by the APA pursuant to R.C. 2967.16. The trial court found that Polinori considered Bevington under his supervision until he received the final release form from Columbus, which he received on October 13 or 14, 2011. The trial court therefore applied the good faith exception found in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677(1984).

**{¶11}** On May 14, 2012, Bevington returned to the trial court to withdraw his plea of not guilty and pled no contest to the charge in the indictment. The trial court found him guilty and sentenced him to three years of community control. Bevington did not receive an additional enhanced sentence for violation of post-release control.

### *Assignment of Error*

**{¶12}** Bevington raises one assignment of error,

**{¶13}** "I. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF HIS RESIDENCE."

### *Law and Analysis*

**{¶14}** When a person is paroled, or released from confinement under a period of post-release control, he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the APA grants final release. R.C. 2967.02(C); R.C. 2967.02(D); R.C. 2967.15(A); R.C. 2967.16. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶36. Even after a prisoner has met the minimum eligibility requirements, parole or post-release control is not guaranteed; the APA "has wide-ranging discretion in parole matters" and may refuse to grant release to an eligible offender. *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28; *State ex rel. Hattie v. Goldhardt*, 69 Ohio St.3d 123, 125, 630 N.E.2d 696(1994). *Clark,* 119 Ohio St.3d at ¶ 38.

**{¶15}** Under R.C. 2967.16, a releasee or a parolee whose maximum sentence has not expired must satisfy the following requirements before being considered for final release: (1) the parolee or releasee has faithfully performed the conditions and obligations of the parole or post-release controls and obeyed the APA's rules and

regulations, (2) the parolee or releasee has been on parole or under post-release control for at least one year, and (3) the superintendent of parole supervision has recommended that the parolee or releasee be granted final release. Even if all of these requirements are met, the APA's decision whether to grant final release is still discretionary. See, *e.g., Bates v. Ohio Adult Parole Auth.* 10th Dist. No. 86AP-471, 1987 WL 17528(Sept. 22, 1987)("While the Adult Parole Authority had the discretion to terminate that parole after one year, it was not obligated to do so."). *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 192 672 N.E.2d 654 (1996).

**{¶16}** In Bevington's case, the parties agree that he fulfilled the requirements to be considered for an early release from post-release control. The sole issue in this case is when that final release became effective.

**{¶17}** The term "final release" is defined as "a remission by the adult parole authority of the balance of the sentence or prison term of a parolee or prisoner or the termination by the authority of a term of post-release control of a releasee." R.C. 2967.01(K).

**{¶18}** The final release in Bevington's case is governed by R.C. 2967.16(B)(1), which states, in relevant part,

> the [adult parole] authority upon the recommendation of the superintendent of parole supervision may enter upon its minutes a final release and, upon the entry of the final release, shall issue to the released prisoner a certificate of final release* * *.

**{¶19}** The language of R.C. 2967.16 is clear and unambiguous on its face and requires no interpretation. The statute clearly states that in order for a final release to be

effective three events must occur. First, the superintendent of parole supervision must recommend the final release to the APA. Second, the APA may enter upon its minutes a final release. Finally, upon the entry of the final release, the APA shall issue to the released individual a certificate of final release.

**{¶20}** In the case at bar, Polinori's testimony established that he mailed the paperwork for Bevington's early release to the APA on or near September 27, 2011. When the search of Bevington's home took place on October 7, 2011, Bevington's status was that of a "Releasee." R.C. 2967.01(J), defines a "Releasee" as,

> an inmate who has been released from confinement pursuant to section 2967.28 of the Revised Code under a period of post-release control that includes one or more post-release control sanctions.

Simply filling out the recommendation and mailing it to the APA in Columbus does not constitute a final release by the APA within the meaning of R.C. 2967.16. *See, Knight v. Stickrath,* 40 Ohio St.3d 38, 40, 531 N.E.2d 716(1988).

**{¶21}** In the case at bar, Bevington had not been granted a final release from post-release control by the APA because the certificate of final release was not entered upon its record, and the APA did not issue the certificate of final release to Bevington until October 14, 2011. Therefore, because the original three-year period of post-release control supervision had not expired, Bevington remained under the supervision of the APA. R.C. 2967.01(N)[1]. Unless the adult parole authority has properly issued a certificate of final release, a releasee remains under supervision of the APA. *See, e.g.*, *Hylton v. McAninch,* 4th Dist. No. 95 CA 2115, 1995 WL 766372(Dec. 28, 1995); *Byrd v.*

---

[1] (N) "Post-release control," means a period of supervision by the adult parole authority after a prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised Code.

*Brigano*, 91 Ohio App.3d 721, 724, 933 N.E.2d 604(12th Dist. 1993). See also, *Green v. Christiansen,* 732 F.2d 1397, 1399 (9th Cir.1984) ("A ministerial mistake does not necessarily excuse [the petitioner] from serving the rest of his sentence"); *Russie v. United States Dep't of Justice,* 708 F. 2d 1445, 1448 (9th Cir. 1982) (holding that Commission is not estopped from exercising jurisdiction despite probation officer's mistaken order of discharge); *United States v. Merritt,* 478 F.Supp. 804, 807 (D.D.C.1979) ("A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution.").

**{¶22}** We find that Polinori had authority to conduct a parole search of Bevington's residence on October 7, 2011 because the APA had not issued Bevington a final release until October 14, 2011.

**{¶23}** Bevington next argues that the search of Bevington's residence was unlawful because Polinori did not have "reasonable grounds" to believe that Bevington failed to abide by the law or by the terms of probation. The state responds that because Bevington never argued this issue in the trial court, he has waived appellate review of this contention.

**{¶24}** Crim.R. 47, which governs motions in criminal proceedings, provides, in relevant part:

> An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. *It shall state with particularity the grounds upon which it is made* and shall set forth the relief or order

sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit. (Emphasis added.).

**{¶25}** In *City of Xenia v. Wallace,* 37 Ohio St.3d 216, 524 N.E.2d 889(1988), the Ohio Supreme Court explained that "[Crim.R. 47], * * * when applied to a motion to suppress evidence obtained by search and seizure, requires that the prosecution be given notice of the specific legal and factual grounds upon which the validity of the search and seizure is challenged." *Id.* at 219. "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." *Id.* at 218. "Failure on the part of the defendant to adequately raise the basis of his challenge constitutes waiver of that issue on appeal." *Id.; Accord*, *State v. Shindler,* 70 Ohio St.3d 54, 58, 636 N.E.2d 319(1994) ("[b]y requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived").

**{¶26}** A review of the record in the case at bar reveals that Bevington never argued before the trial court that Polinori did not have "reasonable grounds" to conduct the search. The trial court did not address the "reasonable grounds" issue in its Judgment Entry, because, as the trial court specifically noted, "The validity of the search as a 'parole search' has not been questioned here." Further support for Bevington's lack of argument that Polinori did not have "reasonable grounds" to conduct the search is contained in the record of the suppression hearing. When asked by the trial judge if Polinori could conduct the search if Bevington was under supervision at the time,

defense counsel reiterated his argument based on R.C. 2967.16 and the final release. (T. at 20-23). At no time did Bevington address the trial court's concern regarding the validity to conduct the search if Bevington was found to be under supervision at the time.

{¶27} We find that Bevington never argued before the trial court that Polinori did not have "reasonable grounds" to believe that Bevington failed to abide by the law or by the terms of probation Accordingly, Bevington's contentions concerning reasonable grounds are waived on appeal. *City of Xenia v. Wallace.*

{¶28} For the forgoing reasons, Bevington's sole assignment of error is overruled in its entirety, and the judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. JOHN W. WISE

WSG:clw 1211

[Cite as *State v. Bevington*, 2012-Ohio-6285.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ANTON BEVINGTON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-106 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. JOHN W. WISE