Charles A. JOHNSON,
Petitioner-Appellee,

v.

J. WILLIFORD, Warden, Metropolitan Correctional Center; United States Parole Commission; and United States of America, Respondents-Appellants.

No. 81–5764.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1982.

Decided July 30, 1982.

Kenneth Caruso, Dept. of Justice, Washington, D.C., for respondents-appellants.

Frank T. Vecchione, San Diego, Cal., for petitioner-appellee.

Before FLETCHER, PREGERSON and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

The government appeals from the district court's order granting Johnson's writ of habeas corpus. Johnson was convicted and sentenced under a federal statute requiring a minimum term of ten years, without possibility of parole. Neither the sentencing order nor the initial sentence computation report noted Johnson's ineligibility for parole. After numerous reviews by the Parole Commission and various other federal officers, none of whom uncovered the error, Johnson was released on parole.

Some 15 months later when the error was discovered, he was arrested and his parole revoked. In response, Johnson petitioned for a writ of habeas corpus. The district court ordered his immediate release pending action on the petition. Upon hearing, the district court granted the writ. We note jurisdiction under 28 U.S.C. § 2253 and affirm.

## FACTS

Johnson was convicted in the Northern District of Florida of conspiring to import marijuana, importing marijuana, and engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1976). On May 25, 1977, he was sentenced to consecutive terms of five, five, and ten years, respectively, for these three convictions. He began serving his sentence on that day. On appeal, the conspiracy conviction was set aside because conspiracy is a lesser included offense of engaging in a continuing criminal enterprise. The aggregate sentence accordingly was reduced to 15 years.

From August 30, 1977 to September 18, 1978, Johnson was imprisoned at the Federal Correctional Institution (F.C.I.) at McNeil Island, Washington. While there, his sentence computation record was prepared, indicating parole eligibility on September 18, 1980. Johnson was moved to Lompoc F.C.I., and authorities there reviewed his sentence computation on October 11, 1978. On May 17, 1979, the sentence computation was reviewed by the administrative systems manager of the western regional office of the Bureau of Prisons. On July 23, 1979, Johnson's case manager recommended a presumptive parole date of September 18, 1980. This recommendation was reviewed by the unit manager at Terminal Island F.C.I. Copies of the recommendation were supplied to the United States Parole Offices in the Northern District of Florida and the Southern District of California. On September 14, 1979, after a Parole Commission hearing, Johnson's release was continued to the presumptive parole date of September 18, 1980. On February 25, 1980, a case manager at Terminal Island F.C.I. recommended a parole date of September 18, 1980, with prior release to a half-way house. Johnson was released to a half-way house—the Salvation Army-Beachaven Community Treatment Center, San Diego, California—on March 26, 1980. Apparently, no release audit was performed at that time. Johnson was released on parole on September 18, 1980, and remained on parole for fifteen months. At the time of his release, Johnson was 39 years old.

Aside from the marijuana related offenses for which he was convicted, the record reveals only one prior incident of criminal conduct—a 10 year old drunk driving conviction. The district court found that he had made an "excellent" adjustment to parole, living with his wife and his two teenage children, operating an agricultural business, reporting regularly to his parole officer and keeping his court appearances. In the words of the district court, "[H]is reintegration into society has been good."

## ANALYSIS

### I. VIOLATION OF 21 U.S.C. § 848 IS A NON–PAROLABLE OFFENSE.

At the time of Johnson's conviction, 21 U.S.C. § 848(c) provided, in pertinent part, that:

In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and section 4202 of Title 18 . . . shall not apply.

Former 18 U.S.C. § 4202 had been the general federal parole eligibility statute. However, it was repealed effective May 14, 1976 by the Parole Commission and Reorganization Act, now codified at 18 U.S.C. § 4201 et seq. The new § 4202 merely creates the Parole Commission.

Johnson's argument is that § 848(c) does not, by its terms, prohibit the granting of parole. It does so only by its reference to former § 4202. Thus when Congress repealed that statute without making an appropriate amendment to § 848(c), violations of § 848(c) ceased being non-parolable. This argument is without merit. "Congress clearly intended to make parole unavailable to those who violated § 848. There is no indication that Congress intended to change this penalty when it reenacted the parole statutes." United States v. Valenzuela, 646 F.2d 352, 354 (9th Cir. 1980). See also 18 U.S.C. § 4205(g) (savings clause in Parole Commission and Reorganization Act); S.Rep.No. 94–369, 94th Cong., 2d Sess., p. 23 (1976), reprinted in [1976] U.S. Code Cong. & Ad.News 335, 344 (explaining savings clause). See generally Muniz v.

*Hoffman,* 422 U.S. 454, 470, 95 S.Ct. 2178, 2187, 45 L.Ed.2d 319 (1975) ("It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such an intention be clearly expressed.").

## II. THE GOVERNMENT IS ESTOPPED FROM ENFORCING THE NON–PA-ROLABILITY PROVISION OF § 848 IN THIS CASE.

### A. The Government is not Immune from Estoppel in this Case.

■ In general, equitable estoppel is not available as a defense against the government, especially when the government is acting in its sovereign, as opposed to its proprietary, capacity. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Saulque v. United States,* 663 F.2d 968, 976 (9th Cir. 1981) (dictum). *See generally Schweiker v. Hansen,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981) (summary disposition) (per curiam); *United States v. Lazy FC Ranch,* 481 F.2d 985, 988–89 (9th Cir. 1973). Nevertheless, this court has held that "where justice and fair play require it," estoppel will be applied against the government, even when the government acts in its sovereign capacity if the effects of estoppel do not unduly damage the public interest. *Lazy FC Ranch,* 481 F.2d at 988–89 (citing *Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); *Brandt v. Hickel,* 427 F.2d 53 (9th Cir. 1970); *Schuster v. C.I.R.,* 312 F.2d 311 (9th Cir. 1962); *Gestuvo v. INS,* 337 F.Supp. 1093 (C.D.Cal.1971)). The Supreme Court has never explicitly endorsed this theory, *see Schweiker v. Hansen,* 450 U.S. at 788–89 & 788 n.4, 101 S.Ct. at 1470–71 & 1471 n.4 (1981), although "no fewer than eight circuits . . . have stated that there are some circumstances in which the Government will be estopped," *Hansen v. Harris,* 619 F.2d 942, 959 (2d Cir. 1980) (Newman, J., concurring) (collecting cases), *rev'd per curiam,* 450 U.S.

785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), and *Moser* has been cited as a case wherein the Supreme Court by its holding, in fact, estopped the Government. *Lazy FC Ranch,* 481 F.2d at 989.

In a recent decision, *Miranda v. INS,* 673 F.2d 1105 (9th Cir. 1982), our court reaffirmed the application of equitable estoppel against the government acting in its sovereign capacity.[1] The court, relying on an estoppel theory, had originally reversed a decision of the Board of Immigration Appeals. *Miranda v. INS,* 638 F.2d 83 (9th Cir. 1980). The Supreme Court vacated the panel's original decision and remanded for further consideration in light of *Hansen. Miranda v. INS,* 454 U.S. 808, 102 S.Ct. 81, 70 L.Ed.2d 77 (1981). Upon reconsideration, the *Miranda* panel adhered to its original judgment. It described *Hansen* as a case in which application of estoppel would circumvent "the conditions defined by Congress for charging the public treasury," *Miranda,* 673 F.2d at 1105–06 (*quoting Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)), while application of estoppel in *Miranda* would not create a drain on the public fisc, *id.* at 1106. In this respect, the instant case is indistinguishable from *Miranda.*

■ We turn now to an examination of whether the threshold requirements for estoppel against the government described in *Lazy FC Ranch* are present here. Under *Lazy FC Ranch,* the government's wrongful conduct must threaten "to work a serious injustice" and the public's interest must not "be unduly damaged by the imposition of estoppel." 481 F.2d at 989. The Parole Commission's deliberate decision to release Johnson on parole, and his subsequent successful reintegration into the community, suggest that his continuation on parole status does not seriously threaten the public interest. The injustice to Johnson if he is reincarcerated is apparent. The government says in its brief, "petitioner's case is in some respects a sympathetic one." We

1. The court in *Saulque,* 663 F.2d at 968, makes the flat statement that estoppel is not available against the government acting in its sovereign capacity, but the facts of that case did not require the court to examine the applicability of the exception spelled out in *Lazy FC Ranch.*

think this is an understatement. The record discloses at least eight separate administrative reviews of Johnson's projected parole date. Each review confirmed that Johnson could be paroled. His expectation of release on parole on September 18, 1980, was raised almost as soon as he began to serve his sentence, and was encouraged and heightened by the successive administrative reviews.

The government argues that Johnson has received a windfall, and that while a return to custody would disappoint his expectations, "those expectations were not justified in any event," in light of his conviction and sentencing under § 848. This assertion is plainly incorrect. The progress of Johnson's case through eight administrative reviews culminating in 15 months of parole release surely justified him in expecting to continue, during good behavior, in that status. The frustration of those expectations would be a serious injustice. Even convicted criminals are entitled to be treated by their government in a fair and straightforward manner. We find that under these facts appellee may raise the defense of estoppel against the Government.

### B. The Elements of Equitable Estoppel Are Present In This Case.

■ Our inquiry so far has focused on whether this is the kind of case in which estoppel may be asserted against the government. Having concluded that it is, we now turn to an examination of whether the traditional elements giving rise to equitable estoppel are present. The four required elements were described by this court in *United States v. Georgia-Pacific Company*, 421 F.2d 92, 96 (9th Cir. 1970):

(1) The party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the facts; and

(4) he must rely on the former's conduct to his injury.

*Id.* (quoting *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)).

The first element is present. Johnson's initial sentence computation report indicates plainly that he was convicted under § 848. The progress reports prepared from time to time all include recitations of his offenses. Prior to Johnson's release, the government had been treating all other prisoners in the same position as Johnson as ineligible for parole. Although there was no case holding that § 848 convictions were non-parolable in the wake of the 1976 Parole Commission and Reorganization Act until *United States v. Valenzuela*, 646 F.2d 352 (9th Cir. 1980), the government can hardly deny knowledge of what it has always treated as settled law.

The second element is also present. Johnson surely had a right to believe, after his parole computation had passed successfully through as many as eight administrative reviews, culminating in his ultimate release on parole for a period of 15 months, that he would remain on parole during good behavior.

The difficult question concerns the third element. The government argues that the crucial "fact" is simply the proper meaning of § 848, and that Johnson should be charged with constructive knowledge despite the fact that the government, the expert here, has misinterpreted or misapplied the statute in eight separate reviews in this case. In *Brandt v. Hickel*, 427 F.2d 53, 56 (9th Cir. 1970), this court observed that "some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement." In the instant case, the Government's active misadvice to Johnson regarding his eligibility for parole prevents us from charging appellee with even constructive knowledge of the proper meaning of § 848. Accordingly, we find the third element of estoppel present.

Finally, there is obvious detrimental reliance in this case. Johnson has been reunited with his family and has left the safe haven of steady employment as a fruit packer in order to start and operate his own fruit packing business. By the time of his rearrest, he had hired five employees, was solely responsible for the business banking accounts, and had been extended credit by local businesses.

In summary, we find that the requisite elements of equitable estoppel are all present and that the government should be estopped.

## III. DUE PROCESS CONSIDERATIONS SUPPORT THE JUDGMENT OF THE DISTRICT COURT.

The district court, as an alternate basis for its holding, found a due process violation, relying on *United States v. Merritt*, 478 F.Supp. 804 (D.D.C.1979). The court in *Merritt* recognized that in some cases "fundamental principles of liberty and justice," would be violated if a person were required to serve the remainder of a prison sentence after he had been released prematurely from custody through no fault of his own, and had made a good adjustment to society. *Id.* at 807–08. In *Merritt*, the petitioner had been sentenced to a term in federal prison to run consecutively with a term he was already serving in a state prison. No action was taken on the detainer, however,

and he was released on parole without serving his federal sentence. When the government rearrested him three years later, the district court ordered his release and vacated the remainder of his federal sentence. *Id.* at 805–06.

■ The government seeks to distinguish *Merritt*[2] and bring this case within the rule of *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973) (per curiam). The Fifth Circuit held in *Piper* that "official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest" is not sufficient to violate due process. *Id.* at 246. The district court found that the government's misconduct here amounted to "more than negligence." We agree. Certainly the government's conduct was not a mere "lack of eager pursuit" or the "lack of interest" described in *Piper*. We find the conduct here much more like that described by the *Piper* court as a *contrast* to the government's conduct in *Piper*, "action so affirmatively wrong or inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction." *Id.* We agree with the district court that to return Johnson to prison now would be "inconsistent with fundamental principles of liberty and justice."[3]

---

2. The government would distinguish *Merritt* from the instant case on the basis that all the court had to do in *Merritt* was "give the prisoner credit for time that had passed since his release," since his unserved sentence would then have already expired. It is true that such a factual distinction can be drawn between the two cases. However, the *Merritt* court did not base its decision on, or even mention, the principle offered by the government to explain away the case.

3. In *Merritt*, the district court extrapolated from *Piper v. Estelle* the relevant factors that determine whether the return of a former prisoner to prison would violate due process. 478 F.Supp. at 807-08. The factors mentioned in *Merritt* are all present here. First, the court observed, "[d]efendant was released as a result of a carefully considered decision of the competent Maryland agency that he, and the community, no longer require his incarceration." *Id.*

at 808. The same can be said of the Parole Commission's decision in the instant case. Second, "defendant has demonstrated exceptional adjustment and progress, and the judgment of the Maryland authorities appears to have been fully vindicated by defendant's subsequent conduct." *Id.* (footnote omitted). The district court's findings here were to similar effect. Finally, "[a]n order requiring service of defendant's sentence now would needlessly jeopardize his long-term adjustment to society, disrupt both his family and his family life, and destroy his economic base, all for no purpose other than to secure blind obedience to the 1973 sentence as it was then imposed." *Id.* (footnotes omitted). Here, too, reincarceration would involve disruption of Johnson's family and family life, the lives of his employees, and the affairs of his business creditors, and threaten his own long term readjustment—all for the sake of blind obedience to the letter of § 848.

## CONCLUSION

The government is estopped from asserting that Johnson is ineligible for parole. Furthermore, to return Johnson to prison under the circumstances of this case would violate due process.

The issuance of the writ of habeas corpus is AFFIRMED.