17 F.3d 396
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Donald R. TURNER, Petitioner-Appellee,
v.
UNITED STATES PAROLE COMMISSION Respondent-Appellant.
 No. 93-15441.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 8, 1993.*
Decided Feb. 9, 1994.
 
 Before: CHOY, GOODWIN and SKOPIL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Donald R. Turner, a federal prisoner, appeals the district court's dismissal of his 28 U.S.C. Sec. 2241 habeas corpus petition challenging the jurisdiction of the United States Parole Commission (Parole Commission) to revoke his parole. We affirm.
 
 
 3
 Turner raised two claims in his section 2241 petition.
 
 
 4
 First, Turner alleged that his federal sentence expired on May 19, 1986 and that the Parole Commission lacked jurisdiction to revoke, or should be estopped from revoking, his parole effective June 3, 1987 for failure to file parole supervision reports and to report a change of address. Second, Turner alleged that the district court erred in denying him an evidentiary hearing.
 
 
 5
 The factual background to the first claim is set forth in our memorandum disposition filed August 14, 1992 in Turner v. United States Parole Commission (CA No. 90-15799), and need not be recited again here. Concluding in our prior disposition that we could not resolve Turner's first claim on the record then before us, we vacated and remanded for consideration of Turner's jurisdictional and estoppel arguments. On remand the district court permitted the Government to submit documents reflecting communications among Turner, the Parole Commission and the Tennessee Department of Corrections, variously announcing the extension and, erroneously, expiration of Turner's federal parole. The district court then rejected Turner's argument that the Parole Commission was estopped from exercising jurisdiction over him.
 
 
 6
 We review de novo the dismissal of a petition for a writ of habeas corpus, Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir.), cert. denied, 488 U.S. 982 (1988). Reviewing the record in this light, we conclude that the district court adequately considered and properly rejected Turner's claim of entitlement to jurisdictional estoppel and an evidentiary hearing.
 
 
 7
 The parties focused their contentions on whether Turner satisfied the five traditional elements of a collateral estoppel claim against the Government. See Lavin v. Marsh, 644 F.2d 1378, 1382 (9th Cir.1981). However, we need not resolve this issue because Turner failed to lay the foundation for consideration of an equitable estoppel claim against the Government. See Johnson v. Williford, 682 F.2d 868, 871-72 (9th Cir.1982); United States v. Lazy FC Ranch, 481 F.2d 985, 989 (9th Cir.1973).
 
 
 8
 Estoppel claims against the Government have traditionally been disfavored. Lazy FC Ranch, 481 F.2d at 988. Given the interest of the citizenry in compliance with the law, "it is well settled that the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Services, Inc., 467 U.S. 51, 59-60 (1984). This interest and the hurdles facing an estoppel claim become more imposing where the government is acting in a sovereign, as opposed to proprietary, capacity, Williford, 682 F.2d at 871, especially in criminal cases. See, e.g., State v. McBride, 288 N.Y.S.2d 170, 176 (1968).
 
 
 9
 Regardless of whether the traditional elements are satisfied, equitable estoppel is unavailable from the outset unless the Government's wrongful conduct threatens "to work a serious injustice" and the public's interest would not be "unduly damaged by the imposition of estoppel." Williford, 682 F.2d at 871; Lazy FC Ranch, 481 F.2d at 989. Turner failed to establish either threshold requirement for raising equitable estoppel.
 
 
 10
 As to the first, unjust result requirement, the Parole Commission's exercise of jurisdiction over Turner following its mistaken missive to Tennessee authorities would not cause serious injustice because the Government's error involved a single, indirect miscommunication contemporaneously contradicted by more authoritative, directly transmitted information. In contrast, in Williford we found merit in the equitable estoppel claim of a reincarcerated parolee whom the Government misinformed about his eligibility for parole in eight separate administrative reviews over the course of a year. 682 F.2d at 872.
 
 
 11
 Here, the Government's erroneous discharge letter misstating Turner's eligibility for parole was a single, isolated communication not even directly relayed to him. As against the eight hearings in which the prisoner in Williford was repeatedly and consistently misinformed, the miscommunication indirectly relayed to Turner was a summary, boilerplate letter originating from an agency other than the Parole Commission and lacking the trappings of carefully confirmed authority marking even a single administrative review proceeding. See Heckler, 476 U.S. at 64. Moreover, whereas the estoppel claimant in Williford did not receive any contemporaneous communications calling into question his eligibility for parole, Turner even signed an almost simultaneously received Notice of Action that should have aroused greater hesitation on his part in taking at face value the less officially documented, secondhand message that his parole had expired.[1]
 
 
 12
 As to the second threshold requirement, absence of societal danger, we have grave misgivings about the risk to the community Turner's release would occasion. In Williford, where even the Government conceded that the "petitioner's case is in some respects a sympathetic one," we concluded that petitioner's continuation on parole status would not "seriously threaten the public interest," in light of his seamless reintegration into society after serving time for trafficking in marijuana. 682 F.2d at 871. Less sympathetically, the instant case involves the incongruity of a habeas corpus petition predicated on equitable grounds from a confirmed recidivist repeatedly convicted and indicted for grave offenses, in some instances committed while petitioner was on parole and in possession of weapons. While "[e]ven convicted criminals are entitled to be treated by their government in a fair and straightforward manner," id. at 872, no unfairness would arise from the Parole Commission's exercise of its jurisdiction to reincarcerate Turner for the latest in a series of parole violations.
 
 
 13
 With regard to Turner's second contention of error, a habeas corpus petitioner is entitled to an evidentiary hearing only if he "alleges facts which, if proved would entitle him to relief." Richmond v. Lewis, 948 F.2d 1473, 1490 (9th Cir.1991). Because Turner failed to establish the predicate for consideration of the traditional elements of an estoppel claim, the facts he alleged in support of his estoppel claim would not have entitled him to relief even if he could prove them to be true. Therefore, insofar as the district court, despite reviewing documents submitted by Turner, denied him an evidentiary hearing, its ruling was proper.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Turner also claimed that his probation officer told him to expect to receive by mail documentation of his new parole status. Although Turner was entitled to present the testimony of witnesses at his parole revocation hearing, the record contains no evidence demonstrating that such a conversation took place or clarifying that the probation officer meant that Turner would receive an official notice of discharge as opposed to confirmation of the extension to 1999 of his parole expiration referenced in the Notice of Action. Even viewing Turner's contentions on this point in the most favorable light, in response to the Parole Commission's failure to send him any such documentation, Turner could be expected to exercise greater diligence in confirming his status before disregarding his parole obligations in order to preserve an equitable claim based on the Government's alleged affirmative misconduct