EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jaime Quiles Hernández<br><br>Peticionario<br><br>vs.<br><br>Roberto Del Valle, Alcaide<br>Cárcel de Bayamón 501<br><br>Recurrido | Certiorari<br><br>2006 TSPR 45<br><br>167 DPR \_\_\_\_ |

Número del Caso: CC-2004-477

Fecha: 30 de marzo de 2006

Tribunal de Apelaciones:

　　　　　　Región Judicial de San Juan

Juez Ponente:

　　　　　　Hon. Zadette Bajandas Vélez

Abogado de la Parte Peticionaria:

　　　　　　Lcdo. Teodoro Mendez Lebrón

Oficina del Procurador General:

　　　　　　Lcda. Sariely Rosado Fernández
　　　　　　Procuradora General Auxiliar

Materia: Hábeas Corpus

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jaime Quiles Hernández

    Peticionario

        vs.                 CC-2004-477    CERTIORARI

Roberto Del Valle, Alcaide
Cárcel de Bayamón 501

    Recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 30 de marzo de 2006

Como resultado de los hechos acaecidos en el Cerro Maravilla en julio de 1978, Jaime Quiles Hernández fue acusado y convicto por seis cargos de perjurio en el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Como consecuencia de lo anterior, fue sentenciado a dos años de prisión por cada cargo, los cuales debían cumplirse consecutivamente entre sí. Posteriormente, y mientras Quiles Hernández cumplía la referida sentencia, el Departamento de Justicia del Estado Libre Asociado de Puerto Rico le sometió dos casos de asesinato y seis cargos de perjurio.

A raíz de ello, en junio de 1985 el Departamento de Corrección del Estado Libre Asociado de Puerto Rico adquirió la custodia de Quiles Hernández, quien, luego de varios trámites procesales, hizo alegación de culpabilidad por dos casos de asesinato en segundo grado y seis de perjurio. Así las cosas, el 18 de junio de 1987, éste fue condenado en el foro estatal a cumplir sentencias indeterminadas de catorce a treinta años de prisión por los cargos de asesinato en segundo grado y de seis años en cada uno de los cargos de perjurio. Las aludidas sentencias debían cumplirse concurrentemente entre sí pero consecutivas con las dictadas por el Tribunal Federal.

Posteriormente, el 22 de septiembre de 1987, la custodia del convicto se transfirió al Negociado de Prisiones Federales; ello con el propósito de que Quiles Hernández terminara de cumplir las sentencias emitidas por el foro federal. Una vez cumplidas las mencionadas sentencias, el 22 de junio de 1992, el Departamento de Corrección del Estado Libre Asociado de Puerto Rico reasumió la custodia de Quiles Hernández.

El 13 de noviembre de 1992, la Junta de Libertad Bajo Palabra --en adelante la Junta-- asumió jurisdicción sobre el caso de Quiles Hernández con el propósito de evaluar si éste era acreedor al beneficio de la libertad bajo palabra. Efectuada la referida evaluación, el 11 de junio de 1993, la Junta le concedió a Quiles Hernández la libertad bajo palabra.

Casi ocho años después, específicamente el 1 de febrero de 2001, el Departamento de Justicia del Estado Libre Asociado de Puerto Rico presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una petición solicitando que se encarcelara a Quiles Hernández. Adujo en síntesis, que la Junta de Libertad Bajo Palabra había adquirido jurisdicción erróneamente sobre el caso de Quiles Hernández toda vez que acreditó, al término mínimo de reclusión necesario para que éste pudiera ser considerado para el beneficio de libertad bajo palabra, el tiempo de reclusión cumplido por éste en la jurisdicción federal. A su vez, alegó que la actuación de la Junta fue una nula, por lo que debía ser dejada sin efecto por el foro judicial.

Luego de varios trámites procesales, y de celebrar una vista en la que evaluó los planteamientos de ambas partes, el 15 de marzo de 2001 el tribunal de instancia determinó que, en efecto, la Junta de Libertad Bajo Palabra había interpretado erróneamente la Ley de Sentencias Indeterminadas. Conforme a ello, concluyó que la determinación de concederle el privilegio a Quiles Hernández fue una *ultra vires* y ordenó su encarcelamiento inmediato.

Inconforme con dicha determinación, Quiles Hernández presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones, el cual fue desestimado por defectos en la notificación del mismo. Quiles Hernández

recurrió, vía *certiorari*, ante este Foro. Denegamos el aludido recurso por incumplimiento con el Reglamento de éste Tribunal.[1]

El 8 de abril de 2003, Quiles Hernández presentó un recurso de *hábeas corpus* ante el Tribunal de Primera Instancia cuestionando la legalidad de su detención. Tras celebrar una vista, el referido foro resolvió que carecía de jurisdicción para atender el recurso presentado toda vez que mediante el mismo Quiles Hernández intentaba revisar las determinaciones previas relativas a su encarcelación. El foro de instancia determinó, además, que los planteamientos del peticionario ya habían sido adjudicados por un juez de igual jerarquía.

Inconforme con dicha determinación, Quiles Hernández acudió --mediante recurso de apelación-- ante el entonces Tribunal de Circuito de Apelaciones. El referido foro, mediante sentencia emitida el 30 de abril de 2004, <u>confirmó</u> la sentencia apelada. En esencia, resolvió que el tribunal de instancia actuó correctamente al resolver que Quiles Hernández pretendía revisar la determinación previa del Tribunal de Primera Instancia que ordenó su encarcelación. Además, determinó que en el presente caso no existen las circunstancias excepcionales que permitan, a manera de excepción, que el recurso de *hábeas corpus* pueda utilizarse

---

[1] En el entretanto, Quiles Hernández acudió ante la Junta de Libertad Bajo Palabra. El 6 de julio de 2001, la mencionada agencia emitió resolución concurriendo con el dictamen del foro primario.

en sustitución de la revisión apelativa. Finalmente, determinó que a Quiles Hernández no se le violó el debido proceso de ley durante los procedimientos llevados a cabo ante el foro de instancia.

Aún inconforme, Quiles Hernández acudió --mediante recurso de *certiorari*-- ante este Tribunal. Alega que incidió el foro apelativo intermedio al:

> … confirmar la sentencia apelada dictaminando que el recurso de Habeas Corpus es improcedente porque mediante el mismo el Peticionario esta [sic] intentando revisar la decisión del Tribunal de Primera Instancia que ordenó su encarcelamiento.

> … resolver que el encarcelamiento del Peticionario no viola los derechos que tiene este [sic] bajo el debido procedimiento de ley que le garantizan el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado y la Enmienda Decimocuarta de la Constitución Federal.

> … no resolver que la reinterpretación, por parte del Estado Libre Asociado de sus leyes y reglamentos, respecto a la forma de computar las sentencias mínimas cuando se estan [sic] cumpliendo dos o más sentencias indeterminadas viola la disposición constitucional en contra de leyes ex post facto.

<u>Expedimos</u> el recurso solicitado. Contando con la posición de ambas partes y estando en posición de resolver el mismo, procedemos a así hacerlo.

I

Como es sabido, el auto de *hábeas corpus* es un recurso extraordinario de naturaleza civil mediante el cual una persona que está privada ilegalmente de su libertad

solicita de la autoridad judicial competente que investigue la causa de su detención. Ramos Rosa v. Maldonado Vázquez, 123 D.P.R. 885, 889 (1989), citando a D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño,* 2da ed. Rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, pág. 170. El auto antes mencionado está reglamentado por el Código de Enjuiciamiento Criminal y está garantizado tanto por la Constitución del Estado Libre Asociado como por la de los Estados Unidos.[2]

En específico, éste Tribunal ha establecido que un auto de *hábeas corpus* no es procedente cuando la determinación judicial que se pretenda conseguir no afecta la detención o custodia del peticionario. Santiago Meléndez v. Tribunal Superior, 102 D.P.R. 71, 73 (1974). Así pues, no es suficiente que exista un mero temor de ser encarcelado, sino que es necesario que exista real y verdaderamente la prisión. Ex parte Soldini, 4 D.P.R. 168 (1903). El referido auto no procede, además, en los siguientes casos: cuando se intenta atacar la validez de una sentencia dictada en un procedimiento criminal; cuando el acusado está libre bajo fianza; cuando el peticionario está recluido o condenado por orden de un tribunal de los Estados Unidos; y cuando el peticionario tiene disponible el recurso de apelación. David Rivé Rivera, *Recursos*

---

[2] 34 L.P.R.A. §§ 1741-1780; Art. II, Sec. 13, Const. E.L.A., L.P.R.A., Tomo 1; U.S. Const. Art. I, § 9, Cl 2.

*Extraordinarios,* 2da ed., San Juan, Ed. Programa de Educación Jurídica Continua, 1996, págs. 175-181.

De otra parte, aun cuando exista real y verdaderamente la prisión del peticionario, debe tenerse claro, al momento de evaluar un auto de *hábeas corpus*, que el mismo es un recurso extraordinario. En virtud de lo anterior, hemos reiterado que, como regla general, tienen que agotarse todos los remedios ordinarios disponibles antes de acudirse al mismo. Ortiz v. Alcaide Penitenciaria Estatal, 131 D.P.R. 849, 861 (1992); Reynolds v. Jefe Penitenciaría, 90 D.P.R. 373 (1964). Cónsono con ello, el artículo 469 (c) del Código de Enjuiciamiento Criminal, 34 L.P.R.A. § 1741, establece que:

> Ningún juez considerará una solicitud de *hábeas corpus* presentada por un confinado recluido en virtud de sentencia final que no haya agotado el remedio provisto en la Regla 192.1 de Procedimiento Criminal, Ap. II de este título. Cuando habiéndolo solicitado le hubiese sido denegado, el tribunal no considerará una solicitud de *hábeas corpus* a menos que aparezca que el remedio provisto por dicha regla era inadecuado o inefectivo para impugnar la validez de la detención. (Énfasis nuestro).

Como todo recurso extraordinario, el uso del auto de *hábeas corpus* debe limitarse a casos verdaderamente excepcionales y a situaciones que en realidad lo ameriten. Ortiz v. Alcaide Penitenciaria Estatal, *ante,* 861 (1992). Por tal razón, en el pasado hemos resuelto que, salvo circunstancias excepcionales, no se concederá el auto de *hábeas corpus* en sustitución de los remedios ordinarios provistos en la ley. Otero Fernández v. Alguacil, 116

D.P.R. 733, 740 (1985). Esto toda vez que, "la encuesta que sobre la legalidad de la prisión o detención lleva a cabo el juez en la vista de *hábeas corpus* se circunscribe a asegurarse de que se han seguido y observado trámites procesales correctos, ajustados al debido proceso de ley." *Ibid*, a las págs. 739-740; <u>Rabell</u> v. <u>Alcaides Cárceles de P.R.</u>, 104 D.P.R. 96, 101 (1975). En otras palabras, la norma general es denegar los autos de *hábeas corpus* que pretendan obviar los remedios ordinarios post sentencia --como el trámite apelativo-- <u>excepto cuando existan circunstancias excepcionales que ameriten su expedición</u>.

Con respecto a la determinación de la existencia o no de circunstancias excepcionales, hemos expresado que los tribunales deben evaluar, <u>además de la disponibilidad de un remedio efectivo para revisar en alzada el error y evitar la continuación de la detención ilegal</u>, factores tales como si de las alegaciones en la petición, con referencia en los hechos específicos, surge: 1) <u>que ha habido una patente violación a algún derecho constitucional fundamental</u>; 2) <u>que no ha habido una renuncia válida a ese derecho</u>; y 3) <u>la necesidad de una vista evidenciaria</u>. Véase: <u>Otero Fernández</u> v. <u>Alguacil</u>, *ante,* a las págs. 740-741.

De otra parte, y al igual que en la esfera federal, hemos resuelto que la doctrina de cosa juzgada <u>no</u> es de estricta aplicación en casos de *hábeas corpus*. <u>Ramos</u> v. <u>Rivera</u>, 68 D.P.R. 548, 550 (1948); <u>Sanders</u> v. <u>U.S.</u>, 373 U.S. 1 (1963). No obstante, el Art. 469 (b) del Código de

Enjuiciamiento Criminal, 34 L.P.R.A. § 1741, dispone que cuando en virtud de una solicitud de *hábeas corpus* anterior exista una determinación catalogando la detención como una legal, ningún juez podrá ser obligado a considerar una nueva petición de *hábeas corpus* a menos que entienda que la nueva petición presenta nuevos fundamentos y que esté convencido de que la expedición del nuevo auto servirá los fines de la justicia.

Como vemos, el mencionado artículo exige, para que un juez no esté obligado a investigar nuevamente la validez de la detención de alguna persona, que exista una determinación previa de legalidad por motivo de una solicitud de *hábeas corpus* anterior. Así pues, en los casos en que no exista dicha determinación previa lo correcto es --de haberse agotado los remedios ordinarios o, en su defecto, de existir circunstancias excepcionales-- atender el recurso y asegurarse de que la detención es legal y que se han seguido y observado los trámites procesales correctos, ajustados al debido proceso de ley. Véase: Otero Fernández v. Alguacil, *ante,* a las págs. 739-740; Rabell v. Alcaides Cárceles de P.R., *ante,* a la pág. 101.

Habiendo expuesto el marco doctrinal pertinente al auto de *hábeas corpus*, procedemos a atender el primer señalamiento de error del peticionario.

A

Mediante su primer señalamiento de error el peticionario aduce que actuaron incorrectamente, tanto el

Tribunal de Apelaciones como el foro de instancia, al resolver que carecían de jurisdicción para atender el recurso de *hábeas corpus* presentado, amparándose en que su propósito era revisar la decisión del foro primario que ordenó su encarcelación. Le asiste la razón.

Como vimos, en el caso de autos no existió una determinación de la legalidad de la encarcelación en un recurso de *hábeas corpus* anterior. Así pues y según lo expresado anteriormente, los tribunales inferiores erraron al determinar que carecían de jurisdicción para atender el auto amparándose en el fundamento de que se intentaba revisar una sentencia final y firme. En el presente caso los planteamientos del peticionario no se atendieron en un auto de *hábeas corpus* anterior, los mismos fueron parte del procedimiento ordinario que debe seguirse ante una solicitud de encarcelación presentada por una actuación alegadamente nula de la Junta de Libertad Bajo Palabra, por lo que éste debe tener la oportunidad de cuestionar la legalidad de su encarcelación.

Ahora bien, lo anterior no quiere decir que automáticamente procediera el auto. Como señaláramos anteriormente, para que proceda un auto de *hábeas corpus* tienen que haberse agotado todos los remedios ordinarios, toda vez que el mencionado recurso no debe utilizarse livianamente por ser uno extraordinario. Se desprende del expediente del caso de autos que el peticionario, a pesar de haber presentado un recurso de apelación ante el

Tribunal Apelativo y uno de *certiorari* ante este Foro cuestionando la corrección de su encarcelación, nunca hizo uso del mecanismo dispuesto en la Regla 192.1 de las de Procedimiento Criminal, *ante,* con anterioridad a la presentación del auto de *hábeas corpus*, conforme lo dispone el Art. 469 del Código de Enjuiciamiento Criminal, *ante.* Por tal razón, debemos considerar si al presente caso le es aplicable la norma general de no atender el auto hasta tanto se agoten los remedios ordinarios o si, por el contrario, existen circunstancias excepcionales que nos permitan apartarnos de dicha regla.[3]

Habida cuenta de ello, y analizados los hechos particulares ante nuestra consideración, somos del criterio que en el caso de autos existen circunstancias excepcionales que permiten atender el recurso de *hábeas corpus* presentado por Quiles Hernández, aun cuando éste no utilizó el mecanismo procesal de la Regla 192.1 de Procedimiento Criminal. Ciertamente, el tiempo que Quiles Hernández estuvo en libertad bajo palabra ──casi ocho

---

[3] Recordamos que "El informe rendido por la Comisión de lo Jurídico del Senado de Puerto Rico recomendando la aprobación de la citada Regla 192.1 contiene, entre otras, las siguientes expresiones: Al presente existen en nuestra jurisdicción varios recursos a través de los cuales se puede atacar la validez de una sentencia. Entre ellos el recurso de apelación, la moción para que se deje sin efecto la sentencia, el *hábeas corpus* y el auto de *coram nobis*. La Regla 192.1 armoniza estos procedimientos proveyendo para una moción mediante la cual puedan someterse al Tribunal todos los elementos de juicio necesarios para que éste pueda determinar la validez de la convicción. 5 Servicio Legislativo de P.R. 592-593 (1967).´" Pueblo v. Ortiz Couvertier, 132 D.P.R. 883, 894 (1993), escolio 11.

años-- unido a su comportamiento en la libre comunidad --nunca se le imputó haber violado las condiciones de su libertad-- hacen que resulte prácticamente mandatorio que la autoridad judicial evalúe la legalidad de su detención.

Por otro lado, resulta pertinente enfatizar que el remedio al que tendría derecho el peticionario, mediante el recurso provisto por la Regla 192.1, *ante,* es idéntico al que tendría derecho, de proceder el auto de *hábeas corpus* presentado. Es por ello que sería, a nuestro juicio, altamente injusto que, años después, nos neguemos a evaluar la legalidad de su detención y determinemos que carecemos de jurisdicción sobre el auto presentado porque no se agotó el mecanismo provisto en la regla de procedimiento criminal antes mencionada.[4] Acorde con lo anterior, resolvemos que se cometió el primer señalamiento de error.


II

Antes de analizar los restantes señalamientos de error, consideramos pertinente evaluar la validez, o nulidad, de la actuación de la Junta de Libertad Bajo Palabra al asumir jurisdicción sobre el caso de Quiles Hernández utilizando, para computar el término mínimo cumplido por éste, el tiempo que cumplió de las sentencias federales consecutivas que le fueron previamente impuestas.

---

[4] Adelantamos que, en la discusión del segundo señalamiento de error, abundaremos sobre las circunstancias especiales existentes en el caso de autos.

Como se sabe, la Ley 295 de 10 de abril de 1946, según enmendada[5], entre otras cosas, proveía para el establecimiento de sentencias indeterminadas en Puerto Rico.[6] En esencia, dicha Ley disponía que los tribunales ordenarían la reclusión del convicto por un término que no podría ser en ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señalara para dicho delito.

Treinta y cuatro años después, la Asamblea Legislativa derogó la Ley Núm. 295, *ante,* y aprobó la Ley de Sentencia Determinada de Puerto Rico.[7] A pesar de dicho cambio estatutario, se estableció --y todavía ésta es la norma que rige-- que la elegibilidad de los casos para la

---

[5] En lo pertinente, el Artículo 1 de dicha Ley <u>establecía</u> que:

> Por la presente se establece la sentencia indeterminada en Puerto Rico; *Disponiéndose,* que, cuando los tribunales condenaren a un reo a cumplir sentencia por delito grave, que no apareje pena de reclusión perpetua, fijarán una sentencia indeterminada y no fijarán límite específico de duración de la sentencia, sino que ordenarán la reclusión del reo por un término que no podrá ser en ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señala para dicho delito; Disponiéndose, además, que en aquellos casos en que la ley no disponga término mínimo o máximo, el tribunal sentenciador fijará dicho término mínimo o máximo. Véase, Leyes de Puerto Rico, 1946, págs.759 – 761.

[6] <u>Es menester destacar que Quiles Hernández fue sentenciado estando en vigor esta Ley</u>.

[7] Véase, Ley Núm. 100 de 4 de junio de 1980, Leyes de Puerto Rico, 1980, págs. 297 – 298.

consideración de la Junta de Libertad Bajo Palabra <u>sobre</u>
<u>cualquier persona recluida en cualquiera de las</u>
<u>instituciones penales de Puerto Rico se determinará según</u>
<u>las disposiciones de la ley bajo la cual fue convicto.</u>[8] Así,
las personas convictas bajo la Ley de Sentencias
Indeterminadas estarían bajo la jurisdicción de la Junta de
Libertad Bajo Palabra según los términos establecidos en
dicha Ley.

En vista de ello, es preciso señalar que la aludida
Ley 295, *ante,* según enmendada por la Ley Núm. 117 de 26 de
junio de 1961,[9] establecía que la Junta de Libertad Bajo
Palabra podía asumir jurisdicción sobre el caso de
cualquier persona que estuviere cumpliendo una sentencia
indeterminada cuando <u>ésta hubiese cumplido el término</u>
<u>mínimo de la misma</u>. De igual forma, <u>en los casos de</u>
<u>sentencias consecutivas o concurrentes de reclusión, el</u>
<u>convicto debería cumplir un periodo igual al mínimo más</u>
<u>largo para que la Junta pudiera asumir jurisdicción sobre</u>
<u>su caso</u>. Dicho de otra manera, la Junta de Libertad Bajo

---

[8] Véase, 4 L.P.R.A. § 1504:

> "La elegibilidad de los casos para consideración
> por la Junta, en cuanto a libertad bajo palabra,
> de cualquier persona recluida en cualquiera de las
> instituciones penales de Puerto Rico, que hubiere
> sido o fuere convicta por delitos cometidos con
> anterioridad a la fecha de vigencia de la ley que
> establece el Sistema de Sentencia Determinada en
> Puerto Rico, se determinará a tenor con las
> disposiciones de la ley que establece la sentencia
> indeterminada en Puerto Rico…"

[9] Leyes de Puerto Rico, 1961, págs. 271 - 272.

Palabra <u>no</u> tendrá jurisdicción sobre los casos de confinados que, estando cumpliendo una o más sentencias indeterminadas, no hayan cumplido el término mínimo de la misma o el mínimo más largo de ser dos o más sentencias consecutivas o concurrentes.[10]

Es de notar que, tanto las disposiciones relativas a las sentencia indeterminadas como las concernientes a la jurisdicción de la Junta de Libertad Bajo Palabra, <u>guardan silencio en torno a la posibilidad de que el término cumplido por un confinado en una sentencia federal, consecutiva a una estatal, pueda acreditársele como tiempo cumplido en ésta última para los efectos de que la mencionada entidad pudiera asumir jurisdicción sobre su caso</u>.

Ante el silencio legislativo, <u>sostenemos que la actuación original de la Junta, en el año 1992, en el caso de autos fue una incorrecta</u>. Somos del criterio que resolver lo contrario sería dar al traste con la razón de ser de las sentencias consecutivas y con la intención legislativa de que las personas convictas cumplan un mínimo de su sentencia antes de poder ser acreedoras de la libertad bajo palabra. Veamos por qué.

---

[10] Véase además la Sección 6.2 del Reglamento Núm. 3570 de la Junta de Libertad Bajo Palabra de 26 de agosto de 1987, derogado por el Reglamento de la Junta de Libertad bajo palabra del 29 de agosto de 2004. Es menester aclarar que la sección 6.2 de ambos reglamentos es virtualmente idéntica.

Como se sabe, las sentencias se cumplen en forma consecutiva cuando una sentencia no empieza a cumplirse hasta terminada la otra; esto es, el convicto solo empieza a cumplir una sentencia tras extinguir la anterior. La determinación judicial de sentencias consecutivas o concurrentes no solo se produce en casos de acumulación de delitos contra un acusado, sino que también se produce cuando el convicto está extinguiendo o va a cumplir una sentencia anterior. Ernesto Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, 1993, Vol. III, pág. 558-559. No obstante, dicha determinación descansa en la sana discreción del tribunal sentenciador excepto por las instancias dispuestas por la Regla 180 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 180.[11]

---

[11] Dicha disposición expresa lo siguiente:

"Términos que no podrán cumplirse concurrentemente

No podrán cumplirse concurrentemente los términos de prisión que deban imponerse en los siguientes casos:

(a) Cuando el reo fuere sentenciado por delito cometido mientras estuviere bajo apelación de otra causa o causas o mientras estuviere en libertad por haberse anulado los efectos de una sentencia condenatoria.
(b) Cuando el reo estuviere recluido o tuviere que ser recluido por sentencia a prisión en defecto de pago de cualquier multa impuéstale.
(c) Cuando el reo cometiere el delito mientras estuviere recluido en una institución penal o cumpliendo cualquier sentencia.
(d) Cuando el reo cometiere delito mientras estuviere en libertad bajo palabra o bajo indulto condicional o bajo cualquier medida de liberación condicional en la cual se le considerare cumpliendo la sentencia impuesta por el tribunal.

(Continúa . . .)

En el caso de autos, el tribunal sentenciador dispuso, específicamente, que las sentencias estatales <u>fueran consecutivas</u> con las federales que estaba cumpliendo el peticionario. Al así disponer, dicho foro pretendió que el término cumplido en la jurisdicción federal <u>no se considerara como tal para los efectos del cumplimiento de la sentencia estatal</u>. Ciertamente, sería <u>incongruente</u> con dicho propósito resolver que el término cumplido en la jurisdicción federal se podía acreditar para los efectos de concederle jurisdicción a la Junta de Libertad Bajo Palabra sobre el caso hoy ante nuestra consideración.

En vista de lo anteriormente expresado, <u>resolvemos que la Junta de libertad Bajo Palabra no puede utilizar el tiempo cumplido por un confinado en una sentencia de otra jurisdicción --consecutiva a una local-- para calcular el tiempo mínimo que éste debe cumplir antes de poder ser acreedor al beneficio de la libertad a prueba.</u>

Procede, <u>sin embargo</u>, atender y resolver los restantes señalamientos de error del peticionario Quiles Hernández.

III

En su segundo señalamiento de error, el peticionario sostiene que el encarcelamiento del que fue objeto violó su

_____

(e) Cuando el reo fuere sentenciado por delito cometido mientras estuviere en libertad bajo fianza, acusado por la comisión de delito grave.
(f) Cuando el reo fuere sentenciado por delito grave o menos grave, según se tipifican en la sec. 4248 del Título 33.

derecho al debido proceso de ley. Esencialmente, Quiles Hernández cuestiona el hecho de que en su caso no se utilizara el procedimiento establecido en la ley para los casos de revocaciones de la libertad bajo palabra. No le asiste la razón.

Como se sabe, en Puerto Rico, el sistema de libertad bajo palabra está regulado por la Ley Núm. 118 de 22 de julio de 1974, 4 L.P.R.A. § 1501 *et seq*. Este sistema "permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad." Maldonado Elías v. González Rivera, 118 D.P.R. 260, 275 (1987). Es importante señalar que el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio, cuya concesión y administración recae en el tribunal o en la Junta de Libertad Bajo Palabra. Pueblo v. Negrón Caldero, res. el 28 de junio de 2002, 2002 T.S.P.R. 95.; Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 536 (1999); Pueblo v. Molina Virola, 141 D.P.R. 613 (1996).

A pesar de lo anterior, hemos resuelto que la persona que goza del beneficio de la libertad bajo palabra tiene una libertad condicionada o cualificada que representa un interés de suficiente valor como para exigir las garantías mínimas del debido proceso de ley cuando se le intente despojar del mismo. Véase: Maldonado Elías v. González

Rivera , *ante;* Martínez Torres v. Amaro Pérez, 116 D.P.R. 717, 723 (1985).

No obstante, dichas garantías procesales no se equiparan, totalmente, a las que tiene todo acusado en un procedimiento criminal, ya que, entre otras cosas, la libertad conferida condicionalmente "no goza de la magnitud ni del grado de la que disfruta un ciudadano común". Martínez Torres v. Amaro Pérez, *ante,* a la pág. 723, y el Estado ya probó la culpabilidad del convicto más allá de duda razonable. Maldonado Elías v. González Rivera, *ante,* a la pág. 266. Ahora bien, se han establecido varias garantías mínimas que se deben ofrecer en los casos de revocación de libertad bajo palabra. Éstas son: (1) una vista preliminar para determinar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra; y (2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. Maldonado Elías v. González Rivera, *ante, a la* pág. 265; Martínez Torres v. Amaro Pérez, *ante*, a la pág. 725.

Las mencionadas garantías fueron estatuidas por la Legislatura mediante la Ley Núm. 2 de 26 de febrero de 1987, la cual enmendó el Artículo 5 de la Ley Núm. 118, a los fines de proveer un procedimiento de revocación que satisfaciera los requisitos constitucionales mínimos del debido proceso de ley según establecidos por el Tribunal Supremo Federal. Véase: Gagnon v. Scarpelli, 411 U.S. 708

(1973); y Morrisey v. Brewer, 408 U.S. 471 (1972). En dicho procedimiento, entre otras cosas, "se reconoce el derecho del liberado a notificación de las alegadas infracciones a las condiciones de la libertad bajo palabra; el derecho a comparecer y presentar evidencia a su favor; confrontar y contrainterrogar testigos adversos; el derecho a que la decisión de revocación sea tomada por un juzgador neutral e independiente y a que se hagan determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó y las razones para revocar la libertad bajo palabra." Ortiz Serrano v. González Alcaide, 131 D.P.R. 849, 858-859 (1992).

No obstante, y además del procedimiento dispuesto en el Art. 5 antes mencionado, el Estado puede impugnar judicialmente una determinación errónea de concesión de libertad condicionada. Así lo dispusimos en Emanuelli v. Tribl. De Distrito, 74 D.P.R. 541 (1953), al expresar que:

"Una actuación nula de la Junta, concediendo la libertad bajo palabra, no surte efecto legal alguno, y en cualquier momento, bien en *hábeas corpus* si el confinado intentare hacer valer sus derechos bajo dicha actuación, o bien mediante solicitud —como en este caso— para que se expida orden de encarcelación si se le hubiere excarcelado en virtud de aquélla, puede dicha actuación ser impugnada judicialmente, sin que obste para ello la ausencia de en el estatuto de disposiciones sobre revisión judicial. (Citas omitidas).

Lo anterior significa que cuando exista una actuación ultra vires de la Junta de Libertad Bajo Palabra —como lo sería una concesión del privilegio a un confinado sobre el

cual no tienen jurisdicción--, no se tiene que utilizar necesariamente el mecanismo provisto para la revocación de la libertad bajo palabra, <u>sino que en cualquier momento se podrá utilizar la vía judicial para dejar sin efecto dicha actuación</u>.

En el caso de autos, surge del expediente que estando el peticionario disfrutando del beneficio de la libertad a prueba, el Departamento de Justicia se percató de que la Junta de Libertad Bajo Palabra había cometido un error al asumir jurisdicción sobre el caso del peticionario y --conforme lo establecido en <u>Emanuelli</u> v. <u>Tribl. De Distrito</u>, *ante,*-- presentó ante el foro primario, y notificó al peticionario, una moción solicitando su encarcelación. Dicho foro, luego de celebrar una vista y escuchar los planteamientos de las partes tanto orales como escritos, determinó que en efecto la actuación de la Junta fue una sin jurisdicción y ordenó el encarcelamiento inmediato del peticionario.

A raíz de los hechos antes mencionados, <u>resulta claro que a Quiles Hernández se le concedieron todas las garantías mínimas del debido proceso de ley antes de ser ordenada su encarcelación</u>. Se le notificó de la moción de encarcelación, se celebró una vista en la que tuvo la oportunidad de ser escuchado y de contrainterrogar a los testigos adversos. De igual forma, pudo presentar por escrito los fundamentos por los cuales entendía no procedía su encarcelación y la decisión en su contra fue

tomada por un juzgador imparcial. Así pues, es menester concluir que el trámite seguido para lograr el encarcelamiento de Quiles Hernández fue uno correcto en el cual se cumplieron las garantías mínimas del debido proceso de ley.

No obstante lo anterior, existe una situación excepcional que amerita nuestra atención y especial consideración.

A

Sabido es que los errores administrativos no crean derechos y pueden ser corregidos en cualquier momento por el Estado. Santiago v. Departamento de la Familia, 153 D.P.R. 208, 218 (2001). Conforme a ello, hemos resuelto que una parte no puede pretender ampararse en una actuación administrativa incorrecta. González Fuentes v. E.L.A., res. el 29 de marzo de 2006, 2006 TSPR 44; Magriz v. Empresas Nativas, 143 D.P.R. 63, 71 (1997); Del Rey v. J.A.C.L., 107 D.P.R. 348, 355-356 (1989).

Por otro lado, es norma reiterada que las doctrinas de actos propios y estoppel, de ordinario, no son aplicables contra el Estado, cuando hay de por medio una cuestión de interés público envuelta. Mendoza Aldarondo v. Asociación de Empleados del Gobierno de Puerto Rico, 94 D.P.R. 564; Infante v. Tribl. Examinador de Médicos, 84 D.P.R. 308, 316-317 (1961); Vives v. La Junta de Farmacia,

24 D.P.R. 669 (1916). Véase además, *Equitable Estoppel of the Government*, 79 Colum. L. Rev. 551 (1979).[12]

No obstante, con el pasar de los años tanto en Puerto Rico[13], como en diversas jurisdicciones norteamericanas[14], se ha reconocido que en situaciones en las que no se afecte el interés público, y en las que pueda ocurrir una clara injusticia, las doctrinas como la de actos propios o "equitable *estoppel*" pueden ser utilizadas contra el Estado.

Específicamente en Berríos v. U.P.R., 116 D.P.R. 88 (1985), expresamos que "en nuestra jurisdicción es aceptable la norma de que bajo circunstancias apropiadas, un demandante puede invocar contra el Estado la doctrina de actos propios, impedimento en equidad y de la buena fe". Véase además, Venancio Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987). Asimismo, en Johnson v. Williford, 682 F.2d 868 (9th Cir. 182) la Corte Federal de

---

[12] Véase también, Office of Personnel Management v. Charles Richmond, 496 U.S. 414, 423-424 (1990), donde el Tribunal Supremo federal se negó a atender la controversia específica de si le es aplicable al gobierno la doctrina de estoppel.

[13] Véase, Carazo v. Srio. de Hacienda, 118 D.P.R. 306 (1987); Berríos v. U.P.R., 116 D.P.R. 88 (1985); Figueroa Cancel v. E.L.A., 114 D.P.R. 684 (1983); García Colón v. Srio. Hacienda, 99 D.P.R. 779 (1971).

[14] Véase, Salgado Díaz v. Alberto R. Gonzales, 395 F.3d 1158 (9th Cir. 2005); Johnson v. Williford, 682 F.2d 868 (9th Cir. 1982); United States v. Lucienne D´Hotelle, 558 F2d 37 (1st Cir. 1977); Corniel-Rodríguez v. I.N.S., 532 F.2d 301 (2d Cir. 1976);United States v. Lazy FC Ranch, 481 F2d. 985 (9th Cir. 1973); Walsonavich v. United States, 335 F.2d 96 (3rd Cir. 1964); Tuck v. Finch, 430 F.2d 1075 (4th Cir. 1970).

Apelaciones de los Estados Unidos, para el Noveno Circuito, le aplicó la doctrina de "equitable *estoppel*" al gobierno en un caso en que la persona había sido convicta por un delito para el cual no estaba asequible el beneficio de la libertad bajo palabra. No obstante ello, la Comisión de Libertad Bajo Palabra del "Northern District" de Florida, sin percatarse de que éste no tenía derecho a la libertad condicionada, le concedió a éste la libertad bajo palabra. Aproximadamente 15 meses después la Comisión se percató del error que había cometido, por lo que revocó la libertad bajo palabra que le había concedido.

A raíz de ello, Johnson presentó un auto de *hábeas corpus*, el cual luego de ser concedido por el tribunal de distrito, posteriormente fue apelado ante la Corte de Apelaciones. Ésta, después de analizar la viabilidad de la aplicación de la doctrina de *estoppel* al gobierno, confirmó el dictamen recurrido, por entender que las actuaciones de la comisión crearon en Johnson una "expectativa de libertad" si cumplía las condiciones que le fueron impuestas. *Ibid*, a las págs. 871-872. Además, el mencionado foro expresó que las actuaciones, tan erróneas y negligentes de la comisión, atentaron contra los principios fundamentales de libertad y justicia, por lo que la encarcelación de Johnson también violaría su debido proceso de ley. *Ibid*, a las págs. 873-874.

Resulta pertinente enfatizar que, luego de analizar varios precedentes jurisprudenciales, el Noveno Circuito en Johnson, ante, sostuvo que "where justice and fair play require it, *estoppel* will be applied against the government even when the government acts in its sovereign capacity if the effects of *estoppel* do not unduly damage the public interest." (Énfasis nuestro). Johnson v. Williford, *ante,* a la pág. 871.

Aun cuando los hechos del presente caso son unos parecidos a los del caso de Johnson v. Williford, ante[15]; en el presente caso existe una situación particular que hace innecesario expresarnos sobre su aplicación a los mismos. Nos referimos al hecho de que Quiles Hernández cumplió el término mínimo de la sentencia que le fuera impuesta por el foro estatal el 20 de mayo de 2000[16], esto es, ocho meses antes de que el Departamento de Justicia solicitara la revocación de la libertad bajo palabra que le fuera concedida. Desde esa fecha, en consecuencia, la

---

[15] La Junta de Libertad Bajo Palabra, en el caso que hoy ocupa nuestra atención, ordenó la encarcelación de una persona que observó una conducta conforme a las condiciones que le fueron impuestas durante ocho largos años, actuación que pudiéramos catalogar como altamente perjudicial para Quiles Hernández y que, de permitirla, propiciaría la comisión de una gran injusticia contra él.

[16] Este hecho forma parte de las determinaciones de hecho que hiciera el foro de instancia; ello a base del testimonio del Sr. Ronald Golderos Caballeros, Jefe de Técnicos de Récords Penales de la Administración de Corrección.

Junta de Libertad Bajo Palabra tiene jurisdicción sobre Quiles Hernández.

En vista a esa situación, somos del criterio que ante los hechos particulares del presente caso, el curso de acción a seguir --justo y correcto-- es dejar sin efecto la sentencia emitida por el Tribunal de Apelaciones[17] y devolver el caso directamente a la Junta de Libertad Bajo Palabra para que ésta, en un término no mayor de noventa días: asuma jurisdicción sobre el caso de Jaime Quiles Hernández, celebre las vistas correspondientes y necesarias, y resuelva si Quiles Hernández amerita ser recipiente del privilegio de una libertad bajo palabra.[18]

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[17] Debido al resultado al que hemos llegado, resulta innecesario atender el tercer señalamiento de error.

[18] Al atender, y resolver, dicha encomienda la Junta de Libertad Bajo Palabra deberá tomar en consideración los siguientes hechos, a saber: que la conducta observada por Quiles Hernández, mientras estuvo en prisión y antes de que erróneamente se le concediera la libertad bajo palabra en el 1992, fue una excelente; que durante los ocho años que estuvo disfrutando de libertad bajo palabra --de 1992 al 2000-- su conducta fue una intachable; y que, desde que fue reingresado en el año 2000 hasta el presente, su conducta en prisión ha sido igualmente excelente. De lo anteriormente expresado, se puede inferir que, actualmente, Quiles Hernández no representa peligro alguno para la ciudadanía puertorriqueña.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Jaime Quiles Hernández

    Peticionario

       vs.                    CC-2004-477      CERTIORARI

Roberto Del Valle, Alcaide
Cárcel de Bayamón 501

    Recurrido


SENTENCIA

San Juan, Puerto Rico, a 30 de marzo de 2006


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia dejando sin efecto la emitida por el Tribunal de Apelaciones y se devuelve el caso <u>directamente</u> a la Junta de Libertad Bajo Palabra para que ésta, en un término no mayor de noventa días: asuma jurisdicción sobre el caso de Jaime Quiles Hernández, celebre las vistas correspondientes y necesarias, y resuelva si Quiles Hernández amerita ser recipiente del privilegio de una libertad bajo palabra.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta disintió sin opinión escrita. Los Jueces Asociados señor Fuster Berlingeri y señora Rodríguez Rodríguez se inhibieron.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo